[840 NE2d 577, 806 NYS2d 465]

In the Matter of VISITING NURSE SERVICE OF NEW YORK HOME CARE, Respondent, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants.

Argued October 18, 2005; decided November 17, 2005

500

## POINTS OF COUNSEL

*Eliot Spitzer, Attorney General,* Albany (*Victor Paladino, Caitlin J. Halligan, Daniel Smirlock* and *Andrea Oser* of counsel), for appellants. I. Visiting Nurse Service of New York Home Care lacks a protected property interest in payments that are expressly made subject to compliance with third-party billing obligations. (*Matter of Daxor Corp. v State of N.Y. Dept. of Health,* 90 NY2d 89, 937, 523 US 1074; *Matter of Astor Gardens Health Care Ctr. v Novello,* 304 AD2d 961; *Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 476 US 1115; *Concourse Nursing Home v State of New York,* 1 AD3d 675, 2 NY3d 704; *Alliance of Am. Insurers v Chu,* 77 NY2d 573; *Matter of Medicon Diagnostic Labs. v Perales,* 74 NY2d 539; *St. Joseph's Hosp. Health Ctr. v Department of Health of State of N.Y.,* 247 AD2d 136, 93 NY2d 803; *Gold v United Health Servs. Hosps.,* 95 NY2d 683; *Calvanese v Calvanese,* 93 NY2d 111; *Cricchio v Pennisi,* 90 NY2d 296.) II. Visiting Nurse Service of New York Home Care received all the process due. (*Matter of Daxor Corp. v State of N.Y. Dept. of Health,* 90 NY2d 89; *Matter of Bronx-Lebanon Special Care Ctr. v DeBuono,* 269 AD2d 195, 95 NY2d 752; *Matter of Medicon Diagnostic Labs. v Perales,* 74 NY2d 539; *Mathews v Eldridge,* 424 US 319; *Matter of Astor Gardens Health Care Ctr. v Novello,* 304 AD2d 961; *Jordan Hosp., Inc. v Shalala,* 276 F3d 72, 537 US 812; *St. Joseph's Hosp. Health Ctr. v Department of Health of State of N.Y.,* 247 AD2d 136; *Matter of A.*

*Holly Patterson SNF v Chassin,* 196 AD2d 155, 83 NY2d 962; *Matter of Rego Park Nursing Home v Perales,* 206 AD2d 781; *Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169.) III. Even if Visiting Nurse Service of New York Home Care was entitled to a hearing, it was error to enjoin the recoupments because Visiting Nurse was entitled only to a postrecoupment hearing. (*Clove Lakes Nursing Home v Whalen,* 45 NY2d 873; *Matter of Fahey v Perales,* 141 AD2d 934; *Matter of White Plains Nursing Home v Axelrod,* 131 AD2d 24; *Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169.)

*Manatt, Phelps & Phillips, LLP,* Albany (*James W. Lytle* of counsel), for respondent. I. The courts below properly held that appellants deprived Visiting Nurse Service of New York Home Care (VNS) of property without due process when they denied VNS a hearing to contest the recoupment of Medicaid payments. (*Oberlander v Perales,* 740 F2d 116; *Matter of White Plains Nursing Home v Whalen,* 53 AD2d 926; *Furlong v Shalala,* 156 F3d 384; *Rockland Medilabs, Inc. v Perales,* 719 F Supp 1191; *Matter of Astor Gardens Health Care Ctr. v Novello,* 304 AD2d 961; *Matter of Sylcox v Chassin,* 227 AD2d 834; *Matter of Daxor Corp. v State of N.Y. Dept. of Health,* 90 NY2d 89; *Matter of Medicon Diagnostic Labs. v Perales,* 74 NY2d 539; *Board of Regents of State Colleges v Roth,* 408 US 564; *Plaza Health Labs., Inc. v Perales,* 878 F2d 577.) II. Appellants' own regulations preclude appellants from recouping Medicaid funds from health care providers unless reimbursement is actually received from the liable third-party payor. (*State of New York v Hollander,* 245 AD2d 625; *St. Joseph's Hosp. Health Ctr. v Department of Health of State of N.Y.,* 247 AD2d 136; *Matter of Good Shepherd-Fairview Home v Axelrod,* 171 AD2d 317; *Matter of Buffalo Columbus Hosp. v Axelrod,* 165 AD2d 605; *Wesley Health Care Ctr., Inc. v DeBuono,* 244 F3d 280; *James Sq. Nursing Home, Inc. v Wing,* 897 F Supp 682.) III. Federal regulations and policy directives require appellants to seek recovery of payment directly from liable third-party payors and not from health care providers. (*Matter of New York State Assn. of Homes & Servs. for Aging v Perales,* 179 AD2d 296; *Jewish Home & Hosp. for Aged v Wing,* 91 F Supp 2d 593.)

*Phillips Lytle LLP,* Buffalo (*Lisa McDougall* and *William P. Keefer* of counsel), for Mercy Hospital of Buffalo and others, amici curiae. I. Providers are entitled to a hearing. (*Clove Lakes Nursing Home v Whalen,* 45 NY2d 873; *Allen v Blum,* 85 AD2d 228, 58 NY2d 954; *Mathews v Eldridge,* 424 US 319; *Board of*

*Regents of State Colleges v Roth,* 408 US 564; *Matter of Bradley v Whalen,* 58 AD2d 664; *Matter of Park Crescent Nursing Home v Whalen,* 55 AD2d 801; *Crane v Axelrod,* 86 AD2d 923; *Washington Nursing Ctr., Inc. v Quern,* 442 F Supp 23; *Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169; *Goldberg v Kelly,* 397 US 254.)

*Gleason, Dunn, Walsh & O'Shea,* Albany (*Thomas F. Gleason* of counsel), for Home Care Association of New York State, Inc., amicus curiae. I. The Medicaid Maximization program as implemented by appellants deprives providers of due process of law and violates appellants' own regulations. (*Oberlander v Perales,* 740 F2d 116; *Matter of White Plains Nursing Home v Whalen,* 53 AD2d 926; *Furlong v Shalala,* 156 F3d 384; *Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169; *Matter of Astor Gardens Health Care Ctr. v Novello,* 304 AD2d 961; *United States ex rel. Thompson v Columbia/HCA Healthcare Corp.,* 125 F3d 899.) II. The Medicaid Maximization program as implemented by appellants illegally delegates power to the Center for Medicare Advocacy. (*Matter of Schumer v Holtzman,* 60 NY2d 46; *Greater Poughkeepsie Lib. Dist. v Town of Poughkeepsie,* 81 NY2d 574; *Matter of Saumell v New York Racing Assn.,* 58 NY2d 231; *Matter of Fink v Cole,* 302 NY 216.)

## OPINION OF THE COURT

GRAFFEO, J.

The issue in this case is whether a home health care provider is entitled to notice and an opportunity to be heard before the State acts to recover Medicaid payments it claims were improperly paid to the provider. Based on regulations promulgated by the New York State Department of Health, we agree with the courts below that a hearing must be held regarding recoupment of the Medicaid funds in dispute.

Medicare and Medicaid are two primary sources of payment for home health care services rendered by providers such as petitioner Visiting Nurse Service of New York Home Care (VNS). There are, however, significant differences between these government-sponsored programs. Medicare is a federal program that provides reimbursement for the medical expenses of persons eligible for Social Security benefits; it is administered exclusively by the United States Department of Health and Human Services (*see* Social Security Act tit XVIII [42 USC § 1395 *et seq.*]). Providers submit claims to the federal agency's fiscal intermediary for evaluation (*see* 42 CFR 424.32 [a] [1]) and this

assessment process uses criteria established by federal law and regulations. Providers can pursue an administrative appeal procedure for rejected claims (*see e.g.* 42 CFR 405.710 *et seq.*; 42 CFR 405.724).

The Medicaid program pays for medical and health services supplied to individuals who fall below a certain income threshold (*see* Social Security Act tit XIX [42 USC § 1396 *et seq.*]). Unlike Medicare, which is fully funded by the federal government, in New York, the State and its counties contribute to the payment of Medicaid-eligible claims (*see* 42 USC § 1396a [a] [2]; §§ 1396b, 1396d [b]). Because of this joint participation, in addition to providing Medicaid coverage for an array of medical and health services specified under federal law, a state may establish its own eligibility criteria, expand the types of services that qualify for coverage and set rates for reimbursement (*see generally* 42 USC § 1396d [a]; § 1396o [c] [1]; [d]; § 1396r-1 [a]; 42 CFR 440.225, 460.2 [b]).

Health care providers file Medicaid reimbursement claims with the New York State Department of Health (DOH) in accordance with state law and regulations (*see* Public Health Law § 201 [1] [v]; Social Services Law § 363-a [1]). Medicaid is referred to as a " 'payor of last resort' " under federal law because other potential sources of payment, such as Medicare, must be exhausted before claims are paid by Medicaid (*Gold v United Health Servs. Hosps.*, 95 NY2d 683, 690-691 [2001], quoting S Rep No. 146, 99th Cong, 2d Sess, at 1, 312, reprinted in 1986 US Code Cong & Admin News, at 42, 279; *see* 42 USC § 1396a [a] [25]). Accordingly, participating providers are required to determine whether health care expenses can be submitted in the first instance to Medicare or some other payor before submission to Medicaid (*see* 18 NYCRR 540.6 [e] [1], [2], [6]). This assessment is particularly critical for persons who are dually eligible for health services under both Medicare and Medicaid.

At the time of Medicaid claim submission, the State does not know what efforts were taken by providers to secure payment from other sources, including Medicare. Medicaid claims are therefore subject to postpayment review through the Medicaid Maximization program (MedMax). New York has contracted with a private entity—the Center for Medicare Advocacy (CMA)—to perform MedMax claim eligibility review. CMA is charged with evaluating whether health care claims that were paid by Medicaid should have been submitted for reimburse-

ment to Medicare or another payor. If CMA identifies improperly disbursed payments, it assists DOH in recovering the funds previously paid to providers.

During the time frame relevant to this appeal (October 1993 to September 1998), VNS billed Medicaid for approximately $1.7 billion in health care services. After conducting the Med-Max review and finding that certain recipients were dually eligible, CMA concluded that $38.2 million of those Medicaid payments should have qualified for reimbursement by Medicare or other third-party payors. Upon resubmission to Medicare, the federal program paid about $28.4 million to VNS and, in turn, VNS refunded an almost identical amount to the State to satisfy the improper Medicaid charges. Medicare did not, however, accept the remaining approximately $10 million of VNS claims because too much time had elapsed from the date the health care services were rendered,[1] or due to errors by the provider. These so-called "provider liability" claims—those disputed Medicaid payments for which VNS was not able to receive compensation by Medicare or another payor—are the subject of this dispute.

DOH began to offset the outstanding $10 million in alleged improper Medicaid payments by withholding other Medicaid revenue due VNS. As a consequence, by December 2002, DOH had recouped over $2 million. VNS responded by initiating this CPLR article 78 proceeding challenging the State's withholding of Medicaid funds, asserting that it was not obligated to repay Medicaid unless it had actually received payment for the services provided from Medicare or some other source. VNS also contested DOH's recoupment procedures on the ground that no administrative hearing had been available for VNS to contest DOH's actions.

Supreme Court granted the provider's petition, concluding that VNS had a property interest in the Medicaid payments that was protected by due process and, as such, DOH was required to conduct a hearing before recovering Medicaid funds from VNS. The Appellate Division affirmed, similarly ruling that VNS was entitled to a hearing to determine if reasonable measures had been undertaken to assess whether the disputed claims were eligible for payment by Medicare or other third-

---

1. Medicare regulations deem a claim to be timely if it is submitted by the end of the calendar year that follows the fiscal year during which the health care service was provided (i.e., a service provided during fiscal year 2000-2001 had to be submitted by December 31, 2002) (*see* 42 CFR 424.44 [a]).

party payors before submission to Medicaid. State recoupment efforts were stayed by the Court because DOH had failed to comply with its own regulatory time frames for conducting hearings. The Appellate Division did, however, agree with DOH's contention that recoupment of provider liability claims was permissible in those instances where VNS failed to engage in reasonable efforts to ascertain whether services were Medicaid-eligible and to satisfy any conditions of approval by that program. Upon the Appellate Division's certification of a question to us,[2] we conclude that a hearing must be held on the issue of whether VNS took reasonable measures to ensure the proper designation and processing of claims.

DOH argues that notice and an opportunity to be heard need not be provided to VNS before recoupment efforts are undertaken because Medicaid payments to home health care providers are conditional pending postpayment MedMax review. But this contention is inconsistent with the regulatory scheme promulgated by DOH. Nothing in the relevant regulations indicates that payments to home health care providers are contingent on postpayment audits (*see* 18 NYCRR 505.23 [e]; *see also* 18 NYCRR parts 517, 518, 519). DOH's reliance on the regulatory provisions that govern payments to nursing homes is misplaced since those regulations specifically state that reimbursement rates are "provisional" until an "audit is performed and completed" (10 NYCRR 86-2.7; *see Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 178-179 [1985]). A similar condition does not appear in the regulations pertaining to home health care providers (*see* 18 NYCRR 505.23 [e]).

Instead, the regulations that cover home health care providers state that if DOH "determine[s] that any person has submitted or caused to be submitted claims for medical care, services or supplies for which payment should not have been made, it may require repayment of the amount determined to have been overpaid" (18 NYCRR 518.1 [b]). "Overpayment" is defined as "any amount not authorized to be paid under the medical assistance program, whether paid as the result of inaccurate or improper cost reporting, improper claiming, unacceptable prac-

---

2. The Appellate Division, Third Department, asked: "Did this Court err, as a matter of law, in affirming the judgment of Supreme Court, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Department of Health directing recoupment of Medicaid overpayments made to petitioner?"

tices, fraud, abuse or mistake" (18 NYCRR 518.1 [c]). "[W]hen a determination is made that an overpayment has been made, any person from whom recovery is sought is entitled to a notice of the overpayment and an opportunity to be heard" (18 NYCRR 518.5 [a]) unless "the department or its fiscal agent adjusts or denies a claim prior to payment or withholds payment pursuant to a notice of withholding" (18 NYCRR 518.5 [b]).

DOH contends that its "overpayment" definition is a term of art that it has interpreted to exclude provider liability claims and, consequently, VNS does not have a right to a hearing under 18 NYCRR 518.5 (a). Although it is true that an agency's interpretation of its own regulation generally is entitled to deference, courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language (*see Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d 337, 342 [2004]). The funds sought to be recovered by DOH fall within the broad definition of "overpayment" in 18 NYCRR 518.1 (c) and, therefore, deference to DOH's interpretation is not warranted under the circumstances. As a result, VNS has the right to "notice of the overpayment and an opportunity to be heard" on the issue of overpayment recoupment (18 NYCRR 518.5 [a]; *see* 18 NYCRR 519.4 [a]).[3]

We next address whether DOH was properly ordered to cease recoupment pending the administrative hearing. VNS concedes that, as a general proposition, DOH is not required to conduct a hearing prior to seeking recoupment of Medicaid funds (*see Clove Lakes Nursing Home v Whalen*, 45 NY2d 873, 875 [1978]). Departmental regulations permit recoupment efforts to commence prior to a hearing (*see* 18 NYCRR 518.8). Significantly, the same regulation further provides that "if the department is unable to proceed within 90 days of receipt of [a] request [for a hearing], any recovery . . . will be stayed pending the commencement of the hearing" and "any delays . . . occasioned by or attributable to the department will forestall the commencement or continuation of recoupment" (18 NYCRR 518.8 [b]). In light of DOH's failure to comply with the prescribed 90-day time frame, it was properly barred from continuing to withhold the Medicaid payments in this case pending an administrative hearing.

---

**3.** It is unnecessary for us to address DOH's argument that due process is satisfied by the MedMax review procedure because a distinct administrative hearing is compelled by the cited regulations.

As the courts below also concluded, the purpose of the hearing will be to consider whether VNS should be relieved of its obligation to repay the contested Medicaid claims. A health care provider is not required to reimburse DOH for services that were paid by Medicaid if the provider "produce[s] acceptable documentation to the department that the provider reasonably attempted to ascertain and satisfy any conditions of approval or other claiming requirements of liable third-party payors" (18 NYCRR 540.6 [e] [6]). Whether a provider satisfies this test requires examination of both the provider's initial assessment that a claim was not eligible for Medicare or other third-party reimbursement and its actions after being notified that a Medicaid-reimbursed claim should be resubmitted to a different payor. At the hearing, the burden will be on VNS to prove that it acted reasonably when it decided to submit the claims at issue to Medicaid rather than to Medicare or other payors and when it was subsequently notified by CMA that certain claims should be resubmitted for Medicare reimbursement eligibility. Recoupment by DOH is prohibited only with respect to claims for which VNS acted reasonably in both instances.

Finally, VNS asks us to decide whether federal law precludes DOH from seeking reimbursement for provider liability claims. VNS, however, did not cross-move to appeal and therefore may not obtain affirmative relief in this Court (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151 n 3 [2002]).

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the negative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, READ and R.S. SMITH concur.

Order affirmed, etc.