OPINION OF THE COURT
Bernice D. Siegal, J.
Plaintiff, a health care provider, commenced the within action to recover reimbursement from defendant insurer for services rendered to plaintiffs assignors including Victoria Orlando,[1] pursuant to New York State’s No-Fault Insurance Law. At trial, the parties stipulated to the following facts:
Plaintiff had mailed and defendant had received eight separate bills, together with an assignment of benefits, as per the following: a claim in the amount of $235.90 for services from February 17, 2004 to March 11, 2004, mailed on March 30, 2004; a claim in the amount of $67.40 for services from April 7, 2004 to April 15, 2004, mailed on May 10, 2004; a claim in the amount of $33.70 for services on April 20, 2004, mailed on June 1, 2004; a claim in the amount of $101.10 for services from May 4, 2004 to May 26, 2004, mailed on June 17, 2004; a claim in the amount of $122.13 for services from November 24, 2003 to November 26, 2003, mailed on December 24, 2003; a claim in the amount of $202.20 for services from December 3, 2003 to December 18, 2003, mailed on January 13, 2004; a claim in the amount of $235.90 for services from December 22, 2003 to January 14, 2004, mailed on February 12, 2004; and a claim for $202.20 for services from January 20, 2004 to February 5, 2004, mailed on March 10, 2004 — the total sum of the above eight claims being $1,200.53.
It was further stipulated that the defendant had failed to deny any of the claims and that the claims remain unpaid. After the stipulation was duly noted for the record, both sides rested. However, despite the acquiescence by defendant as to the principal amounts due and owing, two issues of law were presented, along with a third asserted by defendant in its posttrial memorandum of law: (1) what are the statutory attorney’s fees due plaintiff; (2) what is the statutory interest due plaintiff; and (3) when does the statutory interest accrue.
*675 The relevant provisions governing interest, under the relevant no-fault regulations, are 11 NYCRR 65-3.8 (a) (1) and 65-3.9 (a) and (c).
11 NYCRR 65-3.8 (a), as is pertinent hereto, provides that “(1) No-fault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim . . . .”
Section 65-3.9 (a) provides as follows:
“All overdue mandatory and additional personal injury protection benefits due an . . . assignee shall bear interest at a rate of two percent per month, calculated on a pro rata basis using a 30-day month. When payment is made on an overdue claim, any interest calculated to be due in an amount exceeding $5 shall be paid to the . . . applicant’s assignee without demand therefor.”
Section 65-3.9 (c) provides, as is relevant hereto, that “[i]f an applicant does not request arbitration or institute a lawsuit within 30 days after the receipt of a denial of claim form . . . , interest shall not accumulate on the disputed claim . . . until such action is taken.”
The relevant provisions governing attorney’s fees, under the relevant regulations, are the following.
11 NYCRR 65-3.10, which provides, in pertinent part, as follows:
“(a) A applicant or an assignee shall be entitled to recover their attorney’s fees, for services necessarily performed in connection with securing payment, if a valid claim or portion thereof was denied or overdue. ... If such a claim was overdue but not denied, the attorney’s fee shall be equal to 20 percent of the amount of the first-party benefits and any additional first-party benefits plus interest payable pursuant to section 65-3.9 of this subpart, subject to a maximum fee of $60.”
However, pursuant to Insurance Law § 5106 (a), such attorney’s fees are “subject to limitations promulgated by the superintendent [of the New York State Department of Insurance].” The regulation setting forth those limitations is 11 NYCRR 65-4.6 which, as is relevant to the matter at bar, provides that:
“(c) Except as provided in subdivisions (a) and (b) of this section [those sections dealing with claims that were neither denied nor overdue or which were *676 resolved prior to arbitration], the minimum attorney’s fee payable pursuant to this subpart shall be $60 . . .
“(e) . . . the attorney’s fee shall be limited as follows: 20 percent of the amount of first-party benefits, plus interest thereon, awarded by the . . . court, subject to a maximum fee of $850.”
The dispute between the parties is not so much as to the applicability of the foregoing provisions, but rather the manner in which they are to be applied: the plaintiff provider contending that the statutory interest and attorney’s fees awarded should be based upon each individual claim as submitted through an NF-3 proof of claim; the defendant insurer arguing that the measure of the statutory interest and attorney’s fees be determined by the aggregate of bills which are the subject of the within no-fault action and that interest should be calculated from the date of the commencement of the arbitration or lawsuit.
Proceeding backwards from the third issue presented— when does the interest accrue — the court acknowledges case law wrestling with the interpretation of 11 NYCRR 65.15 (h) (3) (the predecessor to section 65-3.9 [c]), such as the meaning of “applicant” vis-a-vis an “assignee” provider and whether a distinction should be made between timely denials and late denials (see Tsai Chao v Country-Wide Ins. Co., 11 Misc 3d 1090[A], 2006 NY Slip Op 50794[U] [Nassau Dist Ct 2006]; East Acupuncture, P.C. v Allstate Ins. Co., 8 Misc 3d 849 [Civ Ct, Kings County 2005]). However, the patently clear and unambiguous language in section 65-3.9 (c) referring to “the receipt of a denial of claim form” as a key element in determining the date of accrual thereúnder shows the defendant’s argument to be wholly disingenuous, especially in view of the fact that defendant had stipulated at trial that there were no denials. Clearly, then, the defendant’s contention on this issue is totally without merit and whatever interest accruing in this case is to be calculated, pursuant to 11 NYCRR 65-3.8, from 30 days after receipt of the particular claim.
With respect to the other issues presented, the court notes that the language of the aforementioned provisions refer to “claim” in the singular. However, the question remains whether a “claim” refers to each bill submitted or, as argued by the de *677 fendant, to the aggregate of the bills for which a provider seeks reimbursement through a single court action.[2]
With respect to interest, the clear implication found in appellate case law in the Second Department is that statutory no-fault interest is payable as per each claim as per each particular NF-3 submitted for payment (see New York & Presbyt. Hosp. v Allstate Ins. Co., 30 AD3d 492 [2d Dept 2006]; Smithtown Gen. Hosp. v State Farm Mut. Auto. Ins. Co., 207 AD2d 338 [2d Dept 1994]). Furthermore, this court finds such interpretation to be the most logical and reasonable, especially where, as here, the plaintiff’s complaint seeks to recover upon several different claims, each of which has a different date upon which interest begins to accrue (i.e., 30 days from receipt of the particular NF-3).
The case law, however, regarding the manner in which the attorney’s fees provisions are to be applied appears less clearly settled. The Appellate Division in Smithtown Gen. Hosp. v State Farm (supra), in reversing a decision regarding attorney’s fees, held that the lower court “incorrectly interpreted the $850 ceiling to apply to the entire action, rather than to each claim, and failed to set a minimum fee of $60 per claim” (207 AD2d at 339). Following the Smithtown case insofar as awarding attorney’s fees for each claim set forth in separate causes of action, as opposed to the entire action, are the decisions in Willis Acupuncture, P.C. v Government Empls. Ins. Co. (6 Misc 3d 1002[A], 2004 NY Slip Op 51702[U] [Civ Ct, Kings County 2004]) and A.M. Med. Servs. P.C. v New York Cent. Mut. Fire Ins. Co. (NYLJ, July 24, 2006, at 25, col 1 [Civ Ct, Queens County]).
On the other hand, the court notes a recent decision holding contra to Smithtown — Marigliano v New York Cent. Mut. Fire Ins. Co. (13 Misc 3d 1079 [Civ Ct, Richmond County 2006]), citing an October 8, 2003 opinion letter issued by the New York State Department of Insurance (which opinion letter was also cited by the defendant in its memorandum). The court found such opinion not inconsistent with the Smithtown decision which dealt with multiple claims of several assignors, rather *678 than of one assignor, as is the case herein and in Marigliano. The opinion letter states that
“[the] total amount [of attorney’s fees] is derived from the total amount of individual bills disputed in ... a court action . . . , regardless of whether one bill or multiple bills are presented as part of a total claim for benefits, based upon the health services rendered by a provider to the same eligible insured” (Ops Gen Counsel NY Ins Dept No. 03-10-04 [2003]).
Courts have recognized opinions of governmental agencies responsible for the administration of a statute, such as opinion letters from the New York State Department of Insurance, to be entitled to great deference
“[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom . . . [unless] the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent [in which case] there is little basis to rely on any special competence or expertise of the administrative agency and its interpretative regulations are therefore to be accorded much less weight.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see also Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal, 5 NY3d 303 [2005]; Matter of New York Life Ins. Co. v State Tax Commn., 80 AD2d 675 [3d Dept 1981].)
The same principle has similarly been applied to an agency’s interpretation of its own regulations (see Matter of Howard v Wyman, 28 NY2d 434 [1971]; Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d 499 [2005]; Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal, 3 NY3d 337 [2004]; Ocean Diagnostic Imaging P.C. v State Farm Mut. Auto. Ins. Co., 9 Misc 3d 73 [App Term, 2d & 11th Jud Dists 2005]). However, “[Although the interpretation of regulations made by the agency responsible for their administration is generally to be accorded deference, an agency is not thereby freed of the obligation to read those regulations reasonably and rationally” (Matter of Mutual Redevelopment Houses v New York City Water Bd., 279 AD2d 300, 301 [1st Dept 2001]; see also Howard v Wyman, supra; Kurcsics v Merchants Mut., supra; KSLM-Columbus Apts. *679 v New York State Div. of Hous. & Community Renewal, supra; 427 W 51st St. Owners Corp., supra).
Notwithstanding the Marigliano court’s well-written decision in support of the October 8, 2003 opinion letter, this court respectfully disagrees and finds the opinion letter unpersuasive for several reasons.
Firstly, the court finds that, upon reading the opinion letter in question, there is nothing contained therein indicative of the Insurance Department’s involvement in issuing such opinion of “knowledge and understanding of underlying operational practices or [entailing] an evaluation of factual data and inferences to be drawn therefrom ... [or reliance] on any special competence or expertise” rather than being a matter of “pure statutory reading and analysis, [which in the latter instance is] to be accorded much less weight” (Kurcsics, supra at 459).
Secondly, whether or not involving a matter reliant upon the agency’s expertise, the court finds the interpretation offered by the defendant herein, as well as by the Superintendent in the opinion letter and by the court in Marigliano, to be unreasonable. In the letter in question, the term “total,” a word not found in section 65-4.6 (e), is inserted as a qualifier of the term “first-party benefits” without any clear and apparent explanation for doing so, aside from creating a basis for the Department’s interpretation. Perhaps the most compelling argument against the supposed “reasonableness” of such interpretation, making the awarding of statutory attorney’s fees applicable to the aggregate of claims in a no-fault action, whether or not pertaining to only one or more than one assignor, is that it runs counter to a bedrock principle of the No-Fault Law itself, i.e., Insurance Law article 51, the Comprehensive Motor Vehicle Insurance Reparations Act, specifically, in Insurance Law § 5106 (a): “Payments of first party benefits and additional first party benefits shall be made as the loss is incurred” (emphasis added). As the Court of Appeals has expressed it, “the goals of the speedy payment objective of the No-Fault Law ... a driving force behind . . . the no-fault . . . insurance laws, focus on avoiding prejudice to insureds by providing for prompt payment or disclaimers of claims.” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 284 [1997]; see also Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]; Dermatossian v New York City Tr. Auth., 67 NY2d 219 [1986].)
*680 The interpretation sought by the Superintendent also would force a provider to wait until all treatment is concluded before billing an insurance company — an interpretation plainly running afoul of other insurance regulations. As was also said by the court in A.M. Med. Servs. (supra at 25, col 1),
“such standard [proffered by the defendant herein and the Department of Insurance] not only flies in the face of the regulatory policy of promoting prompt payment of claims, but also provides carriers with a disincentive to settlement, and encourages the undesirable effect of increasing the existing tsunami that is pending no-fault litigation in this county.”
Moreover, there is the unambiguous, explicit language of the Appellate Division in the Smithtown decision. (See Visiting Nurse Serv. of N.Y., supra at 506; Oberly v Bangs Ambulance, 96 NY2d 295 [2001].) This court cannot ignore the plain fact that the statutory “proof of claim” form refers to an NF-3 (or functional equivalent) which, while often enumerating a number of medical services provided over more than one date, relates to a single bill, there also often being more than one NF-3 upon which a no-fault complaint seeks recovery. The court also finds significant the fact that, despite years of opportunity to advocate the amending of the no-fault regulations set forth above to either clarify or redefine the term “claim” as it relates to the application of interest and attorney’s fees, the Insurance Department has failed to do so, while a number of no-fault provisions have been amended (e.g., 11 NYCRR 65-3.10[3] and 6S-4.6[4]— the very subject of the opinion letter — have, together, been amended several times since 2001).
Therefore, this court, following Smithtown and its progeny, finds that the statutory attorney’s fees shall be awarded as per each NF-3 herein, rather than upon the total principal awarded by the court.
Accordingly, judgment is awarded to plaintiff provider in the principal aggregate amount of $ 1,200.53, with interest accruing on each of the eight claims at the rate of 2% per *681 month in accordance with section 65-3.9 (a), each said amount of interest accruing 30 days from the date of submission of each such claim.
Plaintiff shall further be awarded attorney’s fees as to each NF-3 herein pertaining to assignor Victoria Orlando, equal to 20% of the amount set forth in each such NF-3 plus interest, provided that each such fee is not less than the statutory minimum of $60 nor in excess of the statutory maximum of $850.

. Prior to trial, the claims with respect to all assignors other than Victoria Orlando had been settled between the parties.

. It is worth noting that the defendant argues in favor of aggregating the claims without any justification except it would have to pay more for interest and attorney’s fees, but the court notes that the bills themselves represent, with the exception of one NF-3, bills for services rendered over a period of a month and, nothing to the contrary in defendant’s memorandum, appear to be a reasonable and rational billing practice.

. Section filed Aug. 2, 2001; amendment filed Jan. 17, 2003, eff Feb. 5, 2003 (amended [a]).

. Section filed Aug. 2, 2001; amendments filed Apr. 11, 2002 as emergency measure; July 9, 2002 as emergency measure; Oct. 4, 2002 as emergency measure; Nov. 27, 2002 as emergency measure; Jan. 17, 2003 as emergency measure; Jan. 17, 2003, eff. Feb. 5, 2003 (amended [b], [e]).