Matter of Arnot Ogden Med. Ctr. v New York State Dept. of Health (2023 NY Slip Op 01344)

Matter of Arnot Ogden Med. Ctr. v New York State Dept. of Health

2023 NY Slip Op 01344

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

535551
[*1]In the Matter of Arnot Ogden Medical Center et al., Appellants,
v
New York State Department of Health et al., Respondents.

Calendar Date:January 9, 2023

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Ward Greenberg Heller & Reidy LLP, Rochester (Thomas S. D'Antonio of counsel), for appellants.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondents.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Oliver N. Blaise III, J.), entered November 23, 2021 in Chemung County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Health calculating petitioners' 2020 Medicaid reimbursement rates.
Petitioners operate general hospitals that include distinct chemical dependency rehabilitation units where individuals receive inpatient services. Petitioners receive reimbursement for the services they provide to recipients of Medicaid, the joint federal and state program established to provide medical care to needy persons (see 42 USC § 1396 et seq.; Social Services Law § 363). Respondent Department of Health (hereinafter DOH), as the agency tasked with administering the Medicaid program in this state (see Social Services Law § 363-a [1]), calculates Medicaid fee-for-service reimbursement rates on a per diem basis for the services (see Public Health Law § 2807-c; 10 NYCRR 86-1.1, 86-1.23 [b]).[FN1] Respondent Commissioner of Health then, among other things, certifies that the calculated rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]).
To provide further detail as to the rates themselves, they are comprised of a capital cost component and an operating cost component based upon costs from a specified base year (see Public Health Law § 2807-c [1] [a-3] [i] [F]; [4] [e-2] [i]). The statute directs that they be determined using 2005 as the base year for operating costs, subject to "trend factor" adjustments for inflation and a cap of 110% "of the average of such reported costs in the region in which the facility is located" (Public Health Law § 2807-c [4] [e-2] [i]; see Public Health Law § 2807-c [10]). The Legislature separately directed, however, that the trend factor used to adjust for inflation be zero for 2020 (see L 2019, ch 57, part E, § 14). Further, although the Commissioner is authorized to update the base year under certain circumstances, the Commissioner did not do so here (see Public Health Law § 2807-c [4] [e-2] [vii]).
After the 2020 Medicaid reimbursement rates for petitioners' chemical dependency units were approved, petitioners commenced this CPLR article 78 proceeding to annul the determinations and compel the recalculation of the rates. Petitioners argued that the Commissioner improperly certified that the rates were "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" and, moreover, that the continued use of the 2005 base year to calculate the operating cost component of the rates was irrational (Public Health Law § 2807 [3]). Following joinder of issue, Supreme Court dismissed the petition. Petitioners appeal.
We affirm. Rate-setting determinations are "quasi-legislative in nature" and will "not be annulled except upon a compelling [*2]showing that the rates are unreasonable" (Matter of Aaron Manor Rehabilitation & Nursing Ctr., LLC v Zucker, 205 AD3d 1193, 1199 [3d Dept 2022], lv granted 39 NY3d 906 [2023]; see Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006]; Matter of Wayne Ctr. for Nursing & Rehabilitation, LLC v Zucker, 197 AD3d 1409, 1414 [3d Dept 2021], lvs denied 37 NY3d 919 [2022]). Moreover, "[w]hen the Legislature is unambiguous but general in its directive regarding reimbursement rates, thereby leaving interpretation and the development of a computation methodology to DOH's discretion, DOH acts in its area of expertise in considering, interpreting and applying the complex rate-setting formulas involved in effectuating the statutory directive" (Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d 1546, 1547 [3d Dept 2012] [citations omitted], lvs denied 21 NY3d 851 [2013]). It follows that rate-setting actions are determinations that are entitled to a "high degree of judicial deference," and they will not be disturbed unless petitioners carry the "heavy burden" of demonstrating that the methodology used to calculate the rates "is unreasonable and unsupported by any evidence" (Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331-332 [1995]; accord Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d at 544; see Matter of Wayne Ctr. for Nursing & Rehabilitation, LLC v Zucker, 197 AD3d at 1414).
Petitioners first attempt to satisfy that heavy burden by suggesting that the Commissioner lacked a rational basis for certifying that the rates were, as required, "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]). Public Health Law § 2807 (3) does not require that the rates cover a facility's actual costs, however, and only assures that a facility can recoup "the necessary costs (i.e., the 'costs which must be incurred') of 'efficiently and economically operated facilities' " (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d at 546, quoting Public Health Law § 2807 [3]; accord Matter of Aaron Manor Rehabilitation & Nursing Ctr., LLC v Zucker, 205 AD3d at 1199-1200; Signature Health Ctr., LLC v State of New York, 92 AD3d 11, 16 [3d Dept 2011]). Petitioners provided proof that the rates did not cover the actual costs at their chemical dependency units and that chemical dependency rehabilitation had generally become more complex and costly since 2005. What petitioners did not give, contrary to their present efforts to argue otherwise, was any reason to believe that their units were "efficiently and economically operated" so as to render those actual costs necessary. Accordingly, we agree with Supreme Court that petitioners did not satisfy their burden of showing that the Commissioner improperly certified the rates as compliant with Public Health Law § 2807 (3) (see Matter of [*3]Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d at 546; Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189-190 [1994]; compare Matter of Aaron Manor Rehabilitation & Nursing Ctr., LLC v Zucker, 205 AD3d at 1200 [movants for summary judgment bore "initial burden of proving that the reimbursement rates were reasonable and adequate"]).
Petitioners also challenge how the operating cost component of the rates was calculated, focusing in particular upon the failure to update the base year used to calculate them. Respondents provided, in response, an affidavit by the Director of DOH's Bureau of Hospital and Clinic Rate Setting, the office tasked with calculating the rates, who described the rate-setting methodology. The Director explained that Public Health Law § 2807-c did provide that the rates be determined using 2005 as the base year for operating costs, as well as how the Commissioner was granted authority to update the base year under certain circumstances. She went on to explain the interplay between those provisions and other legislation, however, especially the 2011 imposition of a "[g]lobal [c]ap" on total Medicaid expenditures requiring that increased rate payments in one area would require cuts elsewhere if such increase pushed total Medicaid expenditures over the cap (see L 2011, ch 59, part H, §§ 91, 92). The Commissioner was granted authority to update the base year three years later, and we view DOH's interpretation of that statutory authority with the global cap in mind to be reasonable. Indeed, the statute granting the Commissioner that authority expressly directs that it be used when "necessary to achieve no aggregate, net growth in overall Medicaid expenditures related to such rates" from the prior year (Public Health Law § 2807-c [4] [e-2] [vii], as added by L 2014, ch 60, part C, § 30). There was therefore no basis for updating the base year where, as here, DOH and the Commissioner had every reason to believe that an update would lead to an increase in the challenged rates that would, in turn, lead to Medicaid expenditures exceeding the global cap.[FN2] Thus, " 'within the parameters set by the Legislature, DOH has advanced ample explanation for setting rates' consistent with its historical practice," and we agree with Supreme Court that petitioners did not meet their burden of showing that the rates set by DOH were irrational (Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d at 1549 [brackets omitted], quoting Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d at 545; see Matter of Sylcox v DeBuono, 267 AD2d 850, 852 [3d Dept 1999], lv denied 94 NY2d 765 [2000]).
To the extent not addressed above, petitioners' remaining arguments have been examined and lack merit.
Clark, Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Medicaid recipients may enroll in managed care plans that negotiate reimbursement rates directly with providers; if the recipients do not, the state pays the providers for services at the fee-for-service reimbursement rate set by DOH (see Social Services Law § 364-j).

Footnote 2: Contrary to petitioners' suggestion, respondents' concern that recalculating the challenged rates would cause problems with the global cap were far from conjectural. The record reflects that Medicaid expenditures would have exceeded the global cap in recent years absent significant action by DOH to prevent that outcome, such as deferring expenditures to the following fiscal year, making across-the-board rate cuts and moving expenditures to other areas of the budget.