Matter of Garden of Eden Home, LLC v Bassett (2025 NY Slip Op 01026)

Matter of Garden of Eden Home, LLC v Bassett

2025 NY Slip Op 01026

Decided on February 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 20, 2025

CV-23-2255
[*1]In the Matter of Garden of Eden Home, LLC, et al., Appellants,
v
Mary T. Bassett, as Commissioner of Health, Respondent.

Calendar Date:January 14, 2025

Before:Aarons, J.P., Pritzker, Lynch, Ceresia and Powers, JJ.

O'Connell and Aronowitz, PC, Albany (Michael Y. Hawrylchak of counsel), for appellants.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Kevin Bryant, J.), entered October 25, 2023 in Albany County, which, among other things, dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of the Department of Health regarding the recoupment of overpayments made to petitioners.
Petitioners are licensed adult care facilities operating in the state and participate in the state's Medicaid program as assisted living program (hereinafter ALP) providers. In 2016, the state enacted the Minimum Wage Act (hereinafter the Act), which amended article 19 of Labor Law to annually increase the minimum wage for all employees in the state on a regional basis until all of the state reached a $15 per hour minimum wage. To assist healthcare providers in abiding by this law, the Legislature appropriated funds to the Department of Health (hereinafter DOH) in the 2016-2017 Aid to Localities Bill. Specifically, the Bill provided that the funds "shall support direct salary costs and related fringe benefits within the medical assistance program associated with any minimum wage increase that takes effect during the timeframe of these appropriations" (L 2016, ch 53, § 1 at 642-643).
In September 2016, a minimum wage survey was sent to ALP providers to determine the financial impact that the Act would have "in order to develop a reimbursement methodology which can account for the increases in the minimum wage over coming years." In October 2016, DOH published a guidance document regarding minimum wage rate setting and final reconciliation process. In this guidance document, DOH advised that funds that were unused or used inappropriately would be returned through an adjustment in Medicaid transfers. Thereafter, in November 2016, DOH submitted a proposed State Plan Amendment (hereinafter SPA) to the Center for Medicare and Medicaid Services (hereinafter CMS) requesting federal approval of the disbursement of these funds to ALP providers. Specifically, DOH proposed that it would "recognize cost increases experienced by ALP providers in accordance with established ALP rate setting methodology." In January 2017, while awaiting federal approval, DOH informed ALP providers that, pending approval of the SPA by CMS, minimum wage increases would be calculated on a regional basis. DOH also informed providers that the additional funds could not be used "for any purpose other than appropriate statutory wage obligations directly associated to the minimum wage increase and shall reserve unspent funds to be returned to the State in the next reimbursement cycle through a rate adjustment or some other mechanism." Subsequently, in 2018, CMS ultimately approved the SPA with a reconciliation provision which provided that, on an annual basis, the distributed minimum wage add-ons would be reconciled based upon surveys completed by the ALP providers to determine whether minimum wage funds needed to be [*2]recouped or additional minimum wage funds needed to be paid.
Throughout 2017 to 2019, DOH sent surveys to ALP providers to determine the financial impact of the minimum wage increases and thereafter adjusted rates regionally to incorporate costs associated with meeting the minimum wage requirement. Then, in November 2020, DOH requested that ALP providers fill out surveys indicating the actual financial impact of the minimum wage increases from 2016 to 2019 due to "discrepancies with [the previously submitted] data." Subsequently, in 2021, DOH provided information to ALPs "regarding the State's Minimum Wage reconciliation from January 1, 2017 through January 1, 2019." Specifically, DOH informed the providers that because the 2017 to 2019 ALP rates were issued using an "incorrect regional calculation when a provider specific calculation should have been used," the initial minimum wage add-ons would be updated, which could result in "recoupments and A/R balance increases." In May 2022, DOH informed ALP providers that overpaid funds from 2017 to 2019 were due to DOH.
Petitioners subsequently commenced this combined CPLR article 78 proceeding and action for declaratory judgment. Petitioners seek, among other things, to annul DOH's recalculation of Medicaid reimbursement rates for 2017-2019 and for DOH to be directed to return any money that was recouped from those payments, as well as a declaration that DOH's attempt to recoup money was arbitrary and capricious. Respondent answered and moved for summary judgment dismissing the declaratory judgment action as duplicative. Supreme Court granted DOH's motion dismissing the declaratory cause of action and further found that DOH's determination to recoup overpayments made to petitioners was supported by a rational basis and, therefore, dismissed petitioners' remaining claims on the merits. Petitioners appeal.[FN1]
As relevant here, "[i]n a CPLR article 78 proceeding to review a determination of an administrative agency, the standard of judicial review is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Concourse Rehabilitation & Nursing Ctr., Inc. v Zucker, 217 AD3d 1189, 1190 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Evercare Choice, Inc. v Zucker, 218 AD3d 882, 885 [3d Dept 2023]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts. When a determination is supported by a rational basis, it must be sustained even if the reviewing court would have reached a different result" (Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d 959, 961 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Ventresca-Cohen v DiFiore, 225 AD3d 9, 11 [3d Dept 2024]).
To resolve petitioners' appeal, we must first determine whether respondent's [*3]recoupment was due to a planned reconciliation or a retroactive policy change. Petitioners assert it was the latter. This distinction is significant because, in our view, if it was a planned reconciliation, DOH need not rely on its common-law right to recoupment in order to recover these overpayments. "There exists a strong, defined public policy of this State to recover public funds improperly received. The public policy underlying recoupment of Medicaid overpayments, or adjustment of rates based upon past overpayments, must be balanced in conjunction with[, among other things,] the nature of the right sought to be protected [and] prejudice to petitioners" (Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169, 182 [1985] [internal citations omitted], cert denied 476 US 1115 [1986]). As such, "where a facility's reimbursement rates were based upon mathematical miscalculation, computer error, or the submission of false information, the Department may retroactively adjust the rates and recoup overpayments" (Matter of Westledge Nursing Home v Axelrod, 68 NY2d 862, 864-865 [1986]). However, "the common-law right of recoupment does not extend to payments made under a statute which predicates determination of the amount to be paid upon judgmental considerations involving expertise and thus leaves that determination to the quasi-legislative discretion of the governmental official making it" (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 34 [1984]).
According to the record, as detailed above, from the outset it was clear that funds disbursed for the minimum wage add-on to the rate would be subject to later reconciliation. Indeed, the text of the Aid to Localities Bill stated that "amounts appropriated [under this Bill] may include advances to organizations authorized to receive such funds" and that "the money hereby appropriated may be increased or decreased by interchange, with any appropriation of [DOH]." Nearly every subsequent communication from DOH to ALP providers regarding the minimum wage add-on detailed that unused funds, or funds that were used inappropriately, would be repaid. There is no dispute that, in January 2017, DOH informed ALP providers that, for those facilities that reported minimum wage impacts, "[m]inimum wage increases . . . [would be] calculated on a regional basis consistent with ALP rate methodology." It also informed these providers that "[t]he method for collecting information and calculating impacts may change in subsequent years." Significantly, this January 2017 communication informed the ALP providers that the rate increases for minimum wage costs would be dependent on approval by CMS of the SPA. DOH also informed ALP providers that it intended to issue "minimum wage cost report modifications to ensure dollars were used appropriately." As such, we do not find that by modifying its earlier decision to calculate rates on a regional basis and instead using a provider-specific calculation to determine the correct [*4]minimum wage add-on to the rate respondent "acted irrationally, erroneously or in an arbitrary and capricious manner " (Matter of Bethany Nursing Home & Health Related Facility v Axelrod, 106 AD2d 809, 811 [3d Dept 1984]). In fact, it appears from the record that this was a one-time budget appropriation and, in an effort to disburse the funds to ALP providers in an expedient manner to aid them in abiding by the Act while awaiting CMS approval, respondent employed the regional methodology while consistently informing providers that doing so was pending CMS approval and would be subject to later reconciliation. This approach was highly rational and fair, and to hold otherwise would result in petitioners receiving a windfall (see generally Matter of Mount Loretto Nursing Home v Perales, 169 AD2d 47, 51 [3d Dept 1991]).
We turn next to petitioners' assertion that respondent's method of calculating the provider-specific cost to comply with the Act by utilizing the baseline of wage rates during the final pay period prior to each minimum wage increase was arbitrary, capricious and irrational. We disagree. "Generally, rate-setting actions of the Commissioner, being quasi-legislative in nature, may not be annulled except upon a compelling showing that the calculations from which they derived were unreasonable" (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006] [internal quotation marks, brackets and citation omitted]; accord Matter of Aaron Manor Rehabilitation & Nursing Ctr., LLC v Zucker, 205 AD3d 1193, 1199 [3d Dept 2022], mod 42 NY3d 46 [2024]). "It follows that rate-setting actions are determinations that are entitled to a high degree of judicial deference, and they will not be disturbed unless petitioners carry the heavy burden of demonstrating that the methodology used to calculate the rates is unreasonable and unsupported by any evidence" (Matter of Arnot Ogden Med. Ctr. v New York State Dept. of Health, 214 AD3d 1195, 1197 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 41 NY3d 905 [2024]; see Matter of New York Univ. Med. Ctr. v Axelrod, 188 AD2d 207, 210 [3d Dept 1993], lv denied 81 NY2d 711 [1993]).
In furtherance of their claim that DOH's method of calculation was arbitrary, capricious and irrational, petitioners assert that they were penalized for raising wages before they were required to do so. The record reveals that the provider-specific calculation was based upon surveys sent to ALP providers wherein they were asked to report, among other things, increases in wages made during the last pay period prior to the deadline set forth in the Act. As such, ALP providers were not reimbursed for minimum wage increases made prior to the applicable deadlines. To contest petitioners' claim, respondent points to the affidavit from Laura Rosenthal, the Health Care Financing Program Manager for the Office of Health Insurance Programs at DOH. Rosenthal stated that DOH did not reimburse ALP providers [*5]who voluntarily increased their rates prior to the deadline set forth in the Act to be consistent with DOH's "goal of balancing the financial needs of ALPs and the financial needs of the State." Rosenthal averred that this was consistent with statewide policy and cited to other state agencies that implemented the same policy. Rosenthal further provided that "[t]his policy conserves state resources while serving the goal of minimum wage implementation, by providing support to workers as necessary."
Given the foregoing, petitioners failed to show that DOH's methodology of reimbursing ALP providers only for minimum wage increases made at the applicable deadlines set forth in the Act was unreasonable and unsupported by any evidence. Despite petitioners' contention that this methodology is contrary to the purpose of the Act because it disincentivizes ALP providers from raising minimum wage rates until the mandated deadline, petitioners have not overcome their heavy burden to show that this methodology used to calculate rates is unreasonable or unsupported by any evidence (see Matter of Arnot Ogden Med. Ctr. v New York State Dept. of Health, 214 AD3d at 1197; Matter of Grand Manor Nursing Home Health Related Facility, Inc. v Novello, 39 AD3d 1062, 1065 [3d Dept 2007], lv denied 9 NY3d 812 [2007]). DOH's methodology is supported by the determination of the agency to balance its interest in conserving state resources while dispensing funds to help ALP providers comply with the Act, which the Aid to Localities Budget Bill and the SPA illustrate is designed to help ALP providers reduce the costs of increasing their employees' minimum wage (see Matter of Corning Natural Gas Corp. v Public Serv. Commn. of the State of N.Y., 221 AD3d 1075, 1083 [3d Dept 2023], appeal dismissed 41 NY3d 968 [2024], lv denied 42 NY3d 906 [2024]; Matter of Avenue Nursing Home & Rehabilitation Ctr. v Shah, 112 AD3d 1178, 1181 [3d Dept 2013]).
While these determinations resolve petitioners' challenges to respondent's right to recoupment of funds and the methodology used, they do not resolve petitioners' remaining argument, that DOH's failure to provide notice and a hearing rendered the recoupments pursuant to the reconciliation unlawful. Initially, although these determinations resolve two of the grounds which petitioners seek to contest at a hearing,[FN2] petitioners also argue that, because they did not receive notice pursuant to 18 NYCRR 519.5, they were not provided with an explanation of the rate calculations or other information sufficient to "allow [petitioners] to assess the accuracy of DOH's allegations of overpayment." Pursuant to 18 NYCRR 518.5 (a), "when a determination is made that an overpayment has been made, any person from whom recovery is sought is entitled to a notice of the overpayment and an opportunity to be heard" (see Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d 499, 506 [2005]). Such notice "must clearly state the determination [*6]made, the basis and specific reasons for the determination, the effect of any action to be taken, the amount of any overpayment or penalty, and the effective date of the action. The notice must also include information concerning the right to a hearing" (18 NYCRR 519.5 [c]; see Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d at 506).
Respondent, both in Supreme Court and on appeal, asserts multiple reasons as to why petitioners were not entitled to notice and a hearing. We find these reasons unpersuasive. According to DOH's regulations, when DOH made the determination that an overpayment was made and then sought to recoup the overpaid funds, petitioners were entitled to "notice of the overpayment and an opportunity to be heard" (18 NYCRR 518.5 [a]). Although respondent claims that petitioners were put on notice of the recoupment of funds as far back as 2016, these notifications did not comply with the notice provisions of the applicable regulations (see 18 NYCRR 519.5). Therefore, petitioners were entitled to notice regarding the amount of overpayment to be recouped and an opportunity to be heard (see Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d at 505-506; see generally Matter of White Plains Nursing Home v Whalen, 53 AD2d 926, 927 [3d Dept 1976], affd 42 NY2d 838 [1977], cert denied 434 US 1066 [1978]). Accordingly, we remit the matter to respondent for further proceedings.
Aarons, J.P., Lynch, Ceresia and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as denied petitioners' third cause of action pertaining to notice and a hearing; matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Petitioners have abandoned any challenge to the dismissal of their declaratory judgment claim by failing to raise it in their brief on appeal (see O'Keefe v Barra, 215 AD3d 1039, 1041 n [3d Dept 2023], lv denied 40 NY3d 908 [2023]).

Footnote 2: We remind petitioners that the applicable regulations limit what issues can be raised at a hearing (see 18 NYCRR 519.18 [a]).