Matter of LL 410 E. 78th St. LLC v Division of Hous. & Community Renewal (2025 NY Slip Op 01672)

Matter of LL 410 E. 78th St. LLC v Division of Hous. & Community Renewal

2025 NY Slip Op 01672

Decided on March 20, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2025

No. 26 

[*1]In the Matter of LL 410 East 78th Street LLC, Appellant,
v
Division of Housing and Community Renewal, Respondent.

Nativ Winiarsky, for appellant. 
Robert Ambaras, for respondent

SINGAS, J.

The Division of Housing and Community Renewal's (DHCR) interpretation of the Rent Stabilization Code (RSC) is entitled to substantial deference. On this appeal we must determine whether the RSC permits DHCR to limit when an owner can amend a prior registration statement for a rent-stabilized housing accommodation and, if so, whether the limitations DHCR has imposed are permissible. Because the RSC gives DHCR discretion over the types of amendments to accept, and DHCR has rationally exercised that discretion in a manner intended to protect tenants from fraud, preserve agency resources, and ensure that rent stabilization disputes are litigated in the proper forum, we agree with the lower courts that DHCR's determination in this case was not arbitrary or capricious.
I.
Petitioner is the owner of an apartment building in Manhattan. In 2019, petitioner filed an application with respondent DHCR to amend its 2016 and 2017 annual registration statements. According to petitioner, the registrations for those years erroneously stated that unit 1B—which housed the building's superintendent—was temporarily exempt from rent stabilization due to owner/employee occupancy when the registration should have reflected that the unit was permanently exempt due to a high rent vacancy in 2002. Petitioner sought to withdraw the purportedly erroneous 2016 and 2017 registrations and submit new registrations removing unit 1B from the total of rent stabilized units.
The Rent Administrator denied the application, stating that registration amendments may "correct ministerial issues such as a clerical error in the rent amount, misspelling of the tenant's name or an incorrect lease term," but noted that amendments "seeking to re-calculate the rental history of the apartment or other types of changes" are not allowed. As examples of non-ministerial amendments, the Rent Administrator listed "seeking to add apartment improvement rent increases, major capital improvement increases, guideline increases, [and] vacancy allowances/longevity that were not previously charged and paid by the tenant." Moreover, the Rent Administrator explained that "[a]mendments seeking to remove an apartment from rent stabilized status due to high rent vacancy decontrol or any other reason claimed as permanent exemption" were not permitted through the registration amendment application process.
Petitioner sought administrative review, which the Deputy Commissioner of DHCR denied. The Deputy Commissioner agreed that "registrations can only be amended for ministerial issues, such as clerical or typographical errors, . . . in accordance with [RSC (9 NYCRR) § ] 2528.3 (c)." The Deputy Commissioner concluded that the amendment process "does not confer unlimited, open-ended rights upon the owner," and that reviewing an amendment application requires the Rent Administrator to determine "whether sufficient justification has been provided by the owner for amending a specific portion . . . of an existing registration to safeguard the integrity of the information currently contained in the registration system." The Deputy Commissioner reiterated that "amendments seeking to remove an apartment from rent stabilized status for any reason claimed are not allowed." The Deputy Commissioner determined that the Rent Administrator correctly concluded petitioner's request went "beyond the scope of an amendment application proceeding," noting that petitioner sought to withdraw the 2016 and 2017 registrations for unit 1B by "claiming it mistakenly filed the apartment registration forms," and provided with its request only amended registration summaries for those years with unit 1B removed from the total of rent stabilized units.
Petitioner commenced the instant CPLR article 78 proceeding to annul DHCR's determination. Supreme Court denied the petition and dismissed the proceeding. The court reasoned that, in concluding "that the correction requested by . . . [p]etitioner was substantive rather than ministerial," DHCR rationally determined that petitioner's request was "unavailable in the context of a registration amendment proceeding."
The Appellate Division unanimously affirmed (see 213 AD3d 558 [1st Dept 2023]). The Court observed that the RSC "provides the procedures for annual apartment registrations, including amendments to those registrations," but "does not provide specific guidance for the rent administrator in deciding whether to grant or deny a particular rent registration amendment application" (id. at 558-559). The Court noted that, prior to RSC amendments that took effect in 2014, "owners were permitted to freely amend . . . rent registrations retroactively" (id.at 559). Because the owner amendments were "unverified," this undermined the "purpose of th[e rent registration] database as a contemporaneously created history of rents" (id. [internal quotation marks omitted]). The Court further acknowledged DHCR's contention that, here, petitioner sought amendments that would remove inconsistencies with petitioner's prior 2002 unverified representations regarding unit 1B's regulatory status (see id.). Because annual registrations are premised on unilateral self-reporting, the Court reasoned that broadly permitting "subsequent amendments to earlier rent registrations . . . could detract from the legitimacy of the registrations" (id.). As such, the Court held that "DHCR's interpretation of the applicable [RSC] provisions" as precluding petitioner's requested amendments "was rational and reasonable" (id.).
We granted petitioner leave to appeal (see 41 NY3d 905 [2024]).
II.
In an article 78 proceeding challenging a determination made without an administrative hearing, this Court's review is limited to whether the determination "was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; see Matter of Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528 [2018]). An agency's determination is "arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]). "If the determination has a rational basis, it will be sustained, even if a different result would not be unreasonable" (Matter of Ward v City of Long Beach, 20 NY3d 1042, 1043 [2013]).
This Court has long recognized that DHCR's interpretation of its own governing regulations is typically entitled to "considerable deference" (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 654 [2013]). This is "because, having authored the promulgated [regulatory] text and exercised its legislatively delegated authority in interpreting it, the agency is best positioned to accurately describe the intent and [*2]construction of its chosen language" (Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019]; see Rent Stabilization Law of 1969 [RSL] [Administrative Code of City of NY] § 26-511). However, that deference is not without limitation: courts may not defer to an agency's interpretation of its own regulations that is "irrational or unreasonable" (Matter of Dworman v New York State Div. of Hous. & Community Renewal, 94 NY2d 359, 371 [1999]).
Under the RSL, every rent-stabilized housing accommodation must be annually "registered by the owner thereof with [DHCR]" (RSL § 26-517). These registration statements must include information about the rent stabilized status of each housing accommodation in a building (see id. § 26-517 [a]). The building owner is responsible for filing the registration on a form provided by DHCR (see RSC § 2528.2) and must provide a copy of the registration to the current tenant (see id. § 2528.3 [b]). Owners who fail to register are precluded from taking certain rent increases on the rent-stabilized accommodation until they properly file a registration (see id. § 2528.4 [a]). DHCR does not review these annual registration statements when they are initially filed.
Though the RSL provides for the initial filing of registration statements, it is silent as to the amendment of prior registration statements. Before 2014, the RSC similarly did not provide for such amendments. Absent any governing statute or regulation, DHCR allowed owners to freely file amended registration statements without agency review. In 2014, DHCR adopted a new regulation—RSC § 2528.3 (c) —governing the filing of such amendments pursuant to its general authority to implement the provisions of the RSL (see RSL § 26-111).[FN1] That regulation provides:
"An owner seeking to file an amended registration statement for other than the present registration year must file an application pursuant to [RSC § ] 2522.6 (b) and [p]art 2527 . . . as applicable to establish the propriety of such amendment unless the amendment has already been directed by DHCR or is directed by another governmental agency that supervises such housing accommodation" (RSC § 2528.3 [c]).[FN2]
DHCR promulgated section 2528.3 (c) as part of a package of RSC amendments. According to DHCR, these new regulations did "not impose any new responsibility on state or local government" (Notice of Proposed Rulemaking, NY St Reg, Apr. 24, 2013 at 16). Regarding its decision to regulate registration amendments, DHCR explained that it had previously accepted such amendments "at any time for any year" (id.). But "[t]he number of such amendments [wa]s significant" and "ha[d] the effect of corrupting the purpose of DHCR's registration data base as a contemporaneously created history of rents" (id.).[FN3] The new regulation thus gave DHCR the authority to "review[ ] and regulate[ ]" these amendments (id.). Before section 2528.3 (c)'s adoption, DHCR explained that the new regulation "would still allow for such amendments, where appropriate, but would ensure that the process was regulated by [DHCR] or another governmental agency and, where appropriate, assure there was also notice to the present tenant" (Consolidated Regulatory Impact Statement at 17).
Because neither section 2528.3 (c) nor any other relevant legal authority defines what is required to establish the "propriety" of an amendment, the regulation gives DHCR significant discretion in determining what type of amendments to permit. This discretion is further supported by DHCR's statements throughout the rulemaking process that section 2526.3 (c) would permit only "appropriate" [*3]amendments, without delineating those "appropriate" circumstances (Notice of Proposed Rulemaking at 16; Consolidated Regulatory Impact Statement at 17; see also Notice of Adoption, NY St Reg, Jan. 8, 2014 at 35 ["There is nothing in the RSL that requires a position that registrations can be amended at any time without proper regulatory oversight or without application"]). Though the regulation gives DHCR broad discretion—the agency must exercise its power rationally (see Matter of Peckham, 12 NY3d at 431). Given the regulation's motivating purpose to protect tenants from fraud and reduce the vast number of registration amendments, DHCR has reasonably exercised this discretion to impose limits on filing amended registrations for the approximately one million housing accommodations that DHCR regulates.[FN4]
DHCR's chosen limiting principle—that amendments may correct only "ministerial" issues—does not permit amendments that seek to remove a housing accommodation's rent-stabilized status.[FN5] The application of that rule to this case was clearly rational. Before the enactment of the Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36, § 1, part F, § 7), a rent-stabilized housing accommodation could become permanently deregulated if the legal regulated rent exceeded a certain threshold upon a vacancy (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 350 [2020]). Upon high rent vacancy deregulation, the obligation to file an annual registration ceases. According to petitioner, unit 1B exceeded this threshold in 2002. Nonetheless, in 2016 and 2017, petitioner filed registrations stating that the unit was only "temporarily" exempt from rent regulation because it was occupied by the building's superintendent (see RSC § 2520.11 [m]). According to petitioner, this was a mistake because unit 1B became permanently deregulated in 2002.
Thus, to determine whether petitioner's proposed amendments were correct, DHCR would first have to determine whether petitioner legally deregulated unit 1B in 2002. But petitioner did not provide any evidence to allow DHCR to engage in this analysis. And even if petitioner had done so, the analysis would require DHCR to take proof on the unit's entire rental history and then adjudicate whether the rent increases that petitioner took to arrive at the 2002 rent were appropriate. An interpretation of section 2528.3 (c) as imposing an obligation to conduct that intensive inquiry cannot be squared with DHCR's statement during the rulemaking process that the new regulations would not impose any noteworthy costs or responsibilities (see Notice of Proposed Rulemaking at 16). To the contrary, DHCR has rationally interpreted the regulation as permitting owners to make only ministerial registration-statement amendments, which do not require such efforts.
The dissent glosses over this crucial step, insisting that the unit "was not subject to rent regulation" simply because petitioner stopped filing registration statements in 2002 (dissenting op at 17). The dissent's assertion that the registrations at issue here were erroneous appears to confuse petitioner's treatment of unit 1B as unregulated with a conclusion that unit 1B was, as a legal matter, not subject to the rent stabilization laws (dissenting op at 2, 10; but see dissenting op at 18 n 13 [agreeing that whether an apartment is rent-regulated "is determined by law"]). Because the dissent simply credits petitioner's assertion that it filed the registrations in error, the dissent reasons that petitioner should be allowed to withdraw the registrations in question without any inquiry into the deregulation (dissenting op at 18 & n 13). But nothing requires DHCR to do the same. DHCR could have chosen to simply accept the amendment without inquiry, but that would have reverted it to its prior practice that enabled fraudulent amendments and gave rise to RSC § 2528.3 (c). It could have undertaken the difficult factual inquiry explained above, but that would have required it to divert agency resources without any significant benefit. Instead, to avoid these undesirable outcomes, it rationally chose to simply disallow this type of amendment.
Petitioner contends that DHCR arbitrarily reached this determination because it is inconsistent with the Deputy Commissioner's prior order in Matter of Rosenberg (DHCR Administrative Review Docket No. [*4]DW410021RT [2018]). There, DHCR permitted an amendment to a registration listing an apartment as owner-occupied because the owner submitted leases with its application demonstrating that the owner did not, in fact, live in the apartment. Here, by contrast, petitioner does not ask DHCR to correct a demonstrable factual error about who lives in unit 1B. Instead, it asks DHCR to endorse its view that the unit was permanently exempt from rent stabilization due to luxury deregulation in 2002, rather than temporarily exempt because of the superintendent's occupancy. Because, as explained above, DHCR cannot resolve that legal question by simply looking at the leases for the period, its decision to treat this case differently from Matter of Rosenberg was not arbitrary.
Petitioner also protests that DHCR's failure to accept the amendments will result in unfair adverse consequences. Specifically, petitioner argues that it could face penalties under the RSC that limit allowable rent increases. But if petitioner is correct that unit 1B was lawfully deregulated, none of those penalties would apply (see RSC § 2528.4 [a]). Petitioner also argues that DHCR's interpretation could expose it to overcharge litigation. But petitioner exaggerates its potential exposure from a single error on the 2016 and 2017 registrations, particularly if the error was, as petitioner asserts, simply a mistake.[FN6] In any event, DHCR has rationally determined that such issues should be litigated in an adversarial proceeding when in actual dispute, rather than preemptively adjudicated in a registration amendment proceeding.
* * *
Neither DHCR's exercise of its regulatory discretion to accept only ministerial amendments nor its denial of petitioner's application was irrational.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

WILSON, Chief Judge (dissenting):

No one disputes what happened. 410 East 78th St. is a five-story tenement-style building with 18 rental apartments. In 2002, a prior owner of the building filed a registration stating that unit 1B was removed from rent regulation via the high-rent decontrol provision in force at the time. Thereafter, the unit was a free-market rental unit. At some later point, the apartment was used to house the building's superintendent. After the whole building changed hands, the new owner, petitioner here, filed registrations stating that unit 1B was temporarily exempt from rent regulation because the superintendent resided there.[FN7]
Because the unit was not subject to rent regulation, those filings were erroneous. Indeed, Supreme Court determined that "there is no dispute that registrations were clearly filed erroneously in 2016 and 2017." In 2019, [*5]pursuant to section 2528.3(c), the owner filed an application with DHCR to correct the erroneous registrations that it had filed in 2016 and 2017. The owner explained that it filed its application after the passage of the Housing Stability and Tenant Protection Act (HSTPA), which established penalties for owners who did not correct prior mistaken registrations (L 2019, ch 36; see RSL § 26-516[h]).
Faced with an application to correct "clearly erroneous" filings, DHCR refused even to consider the merits, rejecting it less than two weeks after its filing on the ground that DHCR would consider only applications seeking "ministerial" amendments. I fully agree with the majority that the law protects us all from irrational or arbitrary government action. The law is supposed to protect us from exactly what happened here.
There are three fundamental problems with DHCR's actions. First, DHCR's attempt to limit the amendments it will consider to those seeking to correct "minor ministerial errors," not "substantive" ones, has no support in the text of the regulation and the legislative history surrounding the adoption of the amendment in 2014. Second, as the majority itself acknowledges, "neither section 2528.3 (c) nor any other relevant legal authority defines what is required to establish the 'propriety' of an amendment" (majority op at 7). DHCR could have promulgated a regulation saying that only amendments seeking to correct "minor ministerial errors" would be accepted, but instead promulgated a regulation that has no substantive content, and according to DHCR, gives the agency unfettered discretion [FN8]. Third, even were we to engraft the words "minor ministerial errors" into the regulation, DHCR has no coherent definition of that term and concedes that it has acted in a completely ad hoc, arbitrary and irrational manner in haphazardly determining what amendments to process. If you are looking for a textbook case of arbitrary government action, look no further.
I.
DHCR's interpretation is inconsistent with both the text and stated intent of the regulation governing the amendment process for rent registration statements. Before 2014, DHCR exercised no oversight of registrations or amendments at the time they were filed. DHCR, of course, evaluated their propriety thereafter, when challenged or otherwise brought to DHCR's attention [FN9]. In 2014, DHCR amended the Rent Stabilization Code (RSC) to require owners to file an application seeking permission to amend a registration. The amended rule instituted a process for agency oversight and review of amendments, providing:
"An owner seeking to file an amended registration statement for other than the present registration year must file an application pursuant to section 2522.6 (b) and Part 2527 of this Title as applicable to establish the propriety of such amendment unless the amendment has already been directed by DHCR" (9 NYCRR § 2528.3[c]).
The amendment is purely procedural and says nothing whatsoever about the bases on which DHCR will determine which applications to consider or grant. DHCR interprets the amendment as incorporating a categorical distinction that is nowhere in the text: applications are limited to those aimed at correcting "minor ministerial errors" in registrations, and the process is not available for "substantive" changes that have "potentially significant implications for a future tenant's status." The cross-referenced section, 2522.6 (b), which is also purely procedural, provides only that, on written request of a party, DHCR may issue an order determining relevant facts about a housing [*6]accommodation that are disputed or unknown, in accordance with the provisions of the Code (see id. § 2522[b]). Part 2527, titled "Proceedings Before the DHCR," sets out requirements for filing an application with the DHCR (id. § 2527.1) and for giving notice to affected parties (id. § 2527.3), as well as the actions the DHCR may take in response (id. § 2527.5).
DHCR has adopted a regulation saying, in essence, "give us some information and we'll do something, or not." Having adopted a substantively standardless regulation, DHCR now argues, as it did in denying the initial application and petition for administrative review, that, because the owner's request to correct an erroneous filing was "substantive"—meaning it had the potential to affect the unit's rent-regulatory status—the owner was not permitted to make the changes through the § 2528.3(c) amendment process. According to DHCR, registration amendments may correct only "ministerial issues such as a clerical error in the rent amount, misspelling of the tenant's name or an incorrect lease term."
DHCR's interpretation has no basis whatsoever in the text of section 2528.3(c). The text is straightforward: the owner must file an application to amend a prior year's registration statement, which DHCR will then evaluate under standard DHCR procedures for resolving disputed facts (see § 2528.3[c]; 2522.6[b]). Nothing in that text limits amendments to those that correct "ministerial" errors. This is in accord with the regulatory impact statement issued at the time of the regulation in 2014, which explicitly stated that the new rule "would still allow for such amendments"—referring to the retroactively filed registrations of the type at issue in Grimm—but would merely "ensure that the process was regulated by itself or another governmental agency, and where appropriate, assure there was also notice to the present tenant" (Consolidated Regulatory Impact Statement for 2014 Amendments at 16; see also RSC Amendment Summary at 1 ["owners will not be able to amend a rent registration without going through an administrative proceeding with notice to the tenant"]).
"Although it is true that an agency's interpretation of its own regulation generally is entitled to deference, courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language" (Visiting Nurse Serv. of New York Home Care v New York State Dept. of Health, 5 NY3d 499 [2005]). For instance, Visiting Nurse Service of New York Home Care involved the Department of Health's interpretation of its own regulations related to health care providers' Medicaid reimbursement claims. The Department of Health proposed an interpretation of "overpayment" that excluded provider liability claims, even though the regulation's own definitions sections defined "overpayment" to include "any amount not authorized to be paid under the medical assistance program" (id. at 505). We rejected the agency's interpretation as inconsistent with the regulation's plain text and with the regulatory scheme promulgated by DOH (id. at 506). That view comports with our "long-established rule" that, when an interpretation is "contrary to the plain meaning" of the relevant language, we have "declined to enforce an agency's conflicting application" (Raritan Dev Corp. v Silva, 91 NY2d 98, 100 [1997]; see Albano v Bd. of Trustees of New York City FireDep't, 98 NY2d 548, 553 [2002] ["Where, however, the question is one of pure statutory interpretation . . . the court 'need not accord any deference to the agency's determination'"]; see also Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 192 [2019] [Garcia, J. dissenting] ["(C)asting aside the plain text . . . enables (an agency) to circumvent statutory promulgation procedures in favor of an informal and erratic process replete with inconsistency" (id. at 191).
DHCR's interpretation here is similarly incompatible with the regulatory text. DHCR's position that amendments must be limited to "minor ministerial errors" conflicts with the regulatory text, which states that amendments will be processed through standard administrative procedures for resolving disputed facts. If an error were truly ministerial (as DHCR explains, "a clerical error in the rent amount, misspelling of the tenant's name or an incorrect lease term"), it would be very hard to reconcile that with the RSC's requirement that the owner "establish the propriety" of its proposed amendment and that DHCR "may issue an order . . . determining facts" related to it (see RSC § 2522.6[b]).
The majority concludes that, because the regulation does not define what is required to establish the "propriety" of an amendment, DHCR has "significant discretion in determining what type of amendments to permit" (majority op at 8). That is true, as far as it goes, but the word "propriety" [*7]cannot be read to allow DHCR to simply refuse to consider any substantive amendment. Under the majority's expansive reading of the term, presumably DHCR could decide that any category of applications is not proper and deny them merits review to conserve agency resources—for example, amendments filed on a Monday, or during the month of April. The regulation does give DHCR significant discretion in determining whether to accept or reject an amendment on the merits, and other provisions detail how DHCR may go about making that decision. For example, the agency may reject an application "if it is insufficient or defective"; "make investigations of the facts, hold conferences, and require the filing of reports, evidence, [or] affidavits"; require persons to appear or produce documents via subpoena; hold hearings; and expedite or stay proceedings (see RSC § 2527.5). Notably, all of those actions would take place in the context of considering an application on the merits. Although no one disputes that DHCR could have rejected the owner's requested changes on the merits if it found them unwarranted, no reasonable interpretation of section 2528.3(c) allows the agency preemptively to reject the owner's request.[FN10]
DHCR chose to adopt a regulation that was procedural only, with no substantive content [FN11]. Had DHCR wished to include a requirement that the only amendments allowed would be corrections of "minor ministerial errors," and not "substantive" errors, it would have had to have made that clear in the proposed regulatory language, presented that language via the process required by State Administrative Procedure Act ("SAPA"), received and considered public comment, and then promulgated that regulation, a different regulation, or no regulation, once the SAPA-directed process was completed (see SAPA § 202). Its belated addition of a "ministerial/substantive" rule to a purely procedural amendment is an end-run around SAPA (see SAPA § 102; see also Schwartfigure v [*8]Hartnett, 83 NY2d 296 [1994] [Department of Labor's recoupment policy was invalid because it was not formally promulgated pursuant to SAPA's rulemaking procedure]).
II
DHCR's construction not only defies the regulation's plain language, but is also so incoherent that DHCR cannot explain what it means by "minor ministerial error" or "substantive." Throughout this litigation, DHCR has no offered no clear definition of what distinguishes a "substantive" from a "ministerial" application. Indeed, it is hard to see why the error here does not fit within the "ministerial" category. The owner erroneously filed paperwork for an apartment that was not regulated. It is undisputed, as Supreme Court found and as the parties agree, that those filings were erroneous, and that the owner sought to correct the mistake [FN12]
. It is unclear why that is any different than someone adding an extra zero to the base rent or making a typographical mistake in the end date of a lease—two of DHCR's stated examples of "minor ministerial" errors.
At oral argument, counsel offered two responses to this conundrum, neither of which DHCR had argued below or briefed. First, counsel claimed that the owner's request was not "ministerial," because in order to review the propriety of the request, DHCR would have had to examine the unit's rental history and confirm it had been legally deregulated in 2002. That, counsel argued, would constitute a "substantive determination" that would "inherently go beyond the clerical or ministerial category" (Tr. at 21-22). Counsel's interpretation means that whether a request is "substantive" depends not on the type of change requested, but rather on the nature and extent of agency review required. Counsel's interpretation is not only unclear (does "substantive" just mean "requires a lot of work"?), but it also gives no guidance to regulated parties (how could a property owner, with no knowledge of the inner workings of DHCR, predict the nature or scope of the agency action required to respond to its request?). And beyond that, it is incoherent: correcting a typographical error in the registered rent might require a lot of work or a little work, yet DHCR characterizes such errors as categorically "ministerial" and therefore suitable to correction.
Second, counsel for DHCR offered a wholly new definition of "substantive": that the requested changes were substantive because they pertained "to one of the three core elements of a registration": "regulatory status, legal regulated rent, and occupancy" (Tr. at 20)[FN13]. But, under that interpretation, it [*9]would be functionally impossible to distinguish substantive from ministerial changes. Adding an extra zero to rent may be a "typographical" error, but it could also affect a future tenant's legal regulated rent and regulatory status, as could a typographical error on a lease termination date. Counsel admitted at oral argument that DHCR's determination as to whether to process an application on the merits or reject it summarily was made on a "case-by-case basis," and that it is "hard to draw a bright line distinction" (Tr. at 20, 24). DHCR's inability to provide a logical, consistent rationale for its interpretation, and its inability to justify its denial of the owner's application in this case, render its determination arbitrary and capricious (see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] ["(agency action) is arbitrary and capricious when it is taken without sound reason or basis in facts"]; see CPLR 7803 [3]). DHCR cannot coherently explain what sorts of amendments it will reject as "substantive" and what it will allow as "minor ministerial." That is nothing more than standardless, ad hoc, irrational and inconsistent regulatory action.
Rather than adopting either of those arguments, the majority introduces a new "limiting principle" for DHCR, which seems to be based on the rationale provided by DHCR for the denial of the owner's PAR: The majority claims that DHCR has chosen to "not permit amendments that seek to remove a housing accommodation's rent-stabilized status" (see majority op at 8). The majority's definition, like DHCR's, is both internally inconsistent and unclear. First, the majority fails to explain why the owner's request in this case is properly classified an "amendment[] that seek[s] to remove a housing accommodation's rent-stabilized status" rather than a "ministerial registration-statement amendment" (see majority op at 8, 10). The owner has expressly stated that it is not litigating the apartment's regulatory status and that "there is nothing preventing a future tenant" from contesting the initial 2002 deregulation in a future proceeding (petitioner-appellant's brief at 27; see also infra at 18 n 13). The majority also fails to explain how this definition can possibly be reconciled with the substantive/ministerial distinction or the countless other definitions DHCR has offered. Why is an amendment seeking to remove an apartment from rent-stabilized status "substantive", but an amendment seeking to add an apartment to rent stabilization "ministerial"? Finally, practically speaking, the majority's definition makes no sense. Let's suppose that DHCR's goal is to maintain as many apartments as possible under rent regulation [FN14]. Under the majority's interpretation, the agency would also bar an amendment that seeks to correct an apartment erroneously registered as rent-stabilized, but which should be registered rent-controlled. What would be the purpose of that?
[*10]III.
Because DHCR cannot even consistently explain what it means by ministerial or substantive, it should be no surprise that its decisionmaking is chaotic and irrationally inexplicable [FN15]. The facts of Matter of Rosenberg, a 2018 DHCR decision, are almost identical to the facts of this case (DHCR Administrative Review Docket No. DW410021RT [2018]). In 2015, the owner in Rosenberg filed a request to amend registrations filed for 2011 to 2013, which had mistakenly referred to the apartment as exempt from rent regulation because it was owner occupied, when the apartment had previously been unregulated. The then-tenant opposed, arguing that the owner gave no valid reason for the amendment and that the registrations were part of a fraudulent scheme to remove the apartment from regulation. DHCR granted the owner's application, even though it acknowledged those amendments had the potential to affect the status of the apartment as regulated, stating:
"The Commissioner finds that the Rent Administrator properly allowed the owner to amend the apartment registrations for the years 2011-2013 based on the owner's assertion that the initial registrations for the subject time period erroneously stated that the apartment was owner-occupied and was otherwise not subject to rent stabilization. The owner submitted tenant leases in support of its application. . . .
Significantly, the Rent Administrator made no determination of the legal regulated rent for the subject apartment. As such, petitioner's assertion that the initial registrations were filed in furtherance of an alleged fraudulent scheme to deregulate the apartment and that the default formula should be used to establish the legal regulated rent have no bearing on the Rent Administrator's decision to permit registration amendments. Registrations by themselves, without concurrent rental documents, are not generally proof of the legal regulated rent or the regulatory status of an apartment."
Rosenberg evidences three important points: (1) contrary to its explanation on this appeal, DHCR does not summarily reject applications that may alter the rent regulatory status of an apartment; (2) DHCR allows amendments to registrations without investigating or rubber-stamping a unit's initial deregulation or its legal regulated rent; and (3) DHCR treated the application in this case and the application in Rosenberg differently, even though they are virtually identical. The agency's failure to conform to its own precedent, absent any explanation for its changing course, "require[s] reversal on the law as arbitrary" (Matter of Charles A. Field Delivery Serv., Inc., 66 NY2d 516, 520 [1985]; see id. at 516-517 ["A decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious"]).[FN16]
DHCR tries to differentiate Rosenberg on two grounds, each of which further illustrates the irrationality of DHCR's decisionmaking. First, DHCR distinguishes Rosenberg because the owner's change was approved "in the context of an adversarial proceeding in which the tenant was afforded notice and an opportunity to be heard," whereas here the unit was occupied by the superintendent. Of course, the presence of a paying tenant has no relationship to DHCR's ministerial/substantive dichotomy, so in distinguishing Rosenberg, DHCR is adding a third dimension to its hidden rule: substantive applications will be considered on the merits if there is a tenant in the apartment. Taking that at face value, the owner should kick out the superintendent, secure a paying tenant, and then re-file its application. The irrationality of that rule is patent [FN17]. More importantly, DHCR's explanation of Rosenberg is diametrically opposed to DHCR's professed explanations that it must filter applications to reduce its workload—a rationale heavily relied on by the majority. If reduction in workload is of paramount importance, DHCR should have granted the instant application, as to which the filings are concededly erroneous, and avoided merits consideration in Rosenberg, which required an adversary hearing.
Second, DHCR contends that the owner in Rosenberg produced leases indicating the unit was leased at free market rates during the years in question. However, DHCR's decision in Rosenberg itself explicitly stated that its decision did not determine the apartment's regulatory status or legal regulated rent. Moreover, the owner in this case has stated that it would have produced leases, had it been given the opportunity, and, in any event, it is undisputed that the filings were in error and the apartment was not subject to rent regulation beginning in 2002.
The majority proffers a new argument, not advanced by DHCR but equally unconvincing, to reconcile this case with Rosenberg. According to the majority, the difference with Rosenberg was that there, "the owner did not, in fact, live in the apartment," whereas here, "petitioner does not ask DHCR to correct a demonstrable factual error about who lives in unit 1B," but instead, "asks DHCR to endorse its view that the unit was permanently exempt from rent stabilization due to luxury deregulation in 2002" (majority op at 10-11). Even aside from DHCR's apparent disavowal of the majority's argument [FN18], there are at least three problems with it. First, the majority appears to endorse DHCR's supplemental argument that whether an amendment is "substantive" depends on how much work the agency must put in to respond to it—which is both illogical and inconsistent with DHCR's earlier arguments. Second, the majority concludes that here, unlike in Rosenberg, DHCR would be forced to evaluate the propriety of 2002 deregulation to evaluate whether to allow the change. However, Rosenberg itself proves that is not the case: [*11]there is no reason why DHCR could not evaluate the propriety of amending the registrations here without endorsing the legality of the initial 2002 deregulation [FN19]. Finally, as a practical matter, the majority's distinction of Rosenberg asks the wrong question. The question is not why the registrations in both cases were erroneous, but whether they were. In Rosenberg, the registration was erroneous because the tenant was paying a free market rent, so the filing stating that the apartment was regulated was wrong for that reason. Here, the registration was erroneous because the apartment had been deregulated long ago, and the owner mistakenly stated the apartment was temporarily unregulated because the superintendent lived there. It makes no sense to make an owner's ability to correct a registration error regarding apartments that were previously unregulated depend on the reason the error was initially made. It is also completely inconsistent with the regulation, which explicitly allows owners to request changes and to put forth evidence to establish the propriety of that request. DHCR summarily denied the owner here even the chance to submit evidence.
IV.
DHCR's position leaves parties with no idea as to whether, or if, their changes will be accepted, or what, if any, documentation to submit. Should the owner have submitted an affidavit explaining the reasons for its error and avowing that it was "clerical" in nature? Or should the owner have submitted leases and documentation proving the legality of the initial deregulation or of the charged rent?[FN20] According to DHCR, an owner's best course of action is to "wait years or decades until a tenant files a complaint" (brief for petitioner-appellant at 24)—a proposition with which the majority agrees.
Rather than hold DHCR accountable for its nonsensical and erratic interpretations, the majority accedes to a grant of unregulated, inexplicable and irrationally applied deference. Basic principles of statutory construction and administrative law demand more. Even if DHCR's position were coherent—which it is not—its regulation makes no reference to DHCR's distinction between substantive and ministerial amendments, and the instruction to establish an amendment's "propriety" cannot be read to make that distinction sub silentio. Nor does the concern cited by the [*12]majority about protecting tenants from fraud and reducing the agency's workload give DHCR license to promulgate a standardless regulation. "[P]olicy considerations cannot create an ambiguity when the words on the page are clear . . . . Our duty is to give effect to the text . . . enacted into law" (SAS Inst., Inc. v Iancu, 584 US 357, 370 [2018]).
If DHCR wishes to promulgate a new rule that restricts the kinds of amendments it will accept, it should do that by a rulemaking, as SAPA requires. But as it now stands, DHCR's exercise of its discretion is ad hoc, arbitrary, and inconsistently applied. I would not wish to be subject to the unbounded governmental discretion allowed by the majority in any context.
Order affirmed, with costs. Opinion by Judge Singas. Judges Rivera, Garcia, Cannataro and Troutman concur. Chief Judge Wilson dissents in an opinion, in which Judge Halligan concurs.
Decided March 20, 2025

Footnotes

Footnote 1: When adopting regulations pursuant to this authority, DHCR must ensure that the regulations meet extensive requirements, including that they "provide safeguards against unreasonably high rent increases," "protect[ ] tenants and the public interest" and "require owners not to exceed the level of lawful rents" (RSL § 26-511 [c] [2], [3]).

Footnote 2: RSC § 2522.6 (b), in turn, provides procedures for DHCR to issue orders resolving certain factual disputes. RSC part 2527 generally outlines the rules for proceedings before DHCR.
Footnote 3: According to DCHR, it received amended registrations for 5,958, 8,597, and 4,579 housing accommodations in each of the three years preceding the 2014 regulation (see NY St Div of Hous & Community Renewal, Consolidated Regulatory Impact Statement at 16 [Apr. 24, 2013]).

Footnote 4: The dissent paradoxically concludes that, because the regulation does not precisely articulate how DHCR may exercise its discretion, DHCR actually has no discretion at all (see dissenting op at 3-8 & n 4).
Footnote 5: A DHCR decision allowing an owner to amend a registration to add rent-stabilized status is not inconsistent with this rule (see dissenting op at 15 n 10) and certainly would not present the same risk of fraud. The dissent's displeasure notwithstanding, for purposes of this proceeding, DHCR need not explain how the rule would apply to every possible amendment application; only that the decision that is the subject of this proceeding is rational.

Footnote 6: In an overcharge proceeding a court could not examine whether the unit was lawfully deregulated in 2002 unless the tenant adequately alleged a fraudulent scheme (see Burrows v 75-25 153rd St., LLC, — NY3d &mdash, — [2025] [decided today]; Regina, 35 NY3d at 354-356). If the tenant did so, petitioner would be free to prove that the housing accommodation was, in fact, properly deregulated.

Footnote 7: If a superintendent lives in a unit subject to rent regulation, the unit may be exempt from rent stabilization during the superintendent's years of occupancy, as often, the superintendent is living for a free or reduced rent in exchange for services (see e.g. RSC § 2520.11[m]). However, the superintendent's occupancy does not change the underlying status, which operates as a matter of law (see e.g. Rent Stabilization Law §§ 26-504, 26-505).

Footnote 8: As the majority notes, "DHCR's statements throughout the rulemaking process [were] that section 2526.3 (c) would permit only 'appropriate' amendments, without delineating those 'appropriate' circumstances" (majority op at 8).

Footnote 9: For example, in Grimm v Division of Hous. & Community Renewal (15 NY3d 358 [2010]), a tenant brought a rent overcharge complaint against her landlord, which DHCR denied based on registration statements that indicated a "base date" rent and later adjustments had been lawful. However, DHCR failed to examine the reliability of those records, which, as it turns out, had been filed "retroactively after receiving [tenant's] overcharge complaint" (id. at 366). The retroactively filed statements were one of several factors that led the Court to conclude that DHCR "acted arbitrarily disregarding the nature of petitioner's allegations," (the tenant had alleged fraud), "and in using the base date without, at a minimum, examining its own records to ascertain the reliability and the legality of the rent charged on that date" (id. at 367).

Footnote 10: The majority caricatures my position as: "because the regulation does not precisely articulate how DHCR may exercise its discretion, DHCR actually has no discretion at all" (majority op at 8, n 4). DHCR had full discretion to evaluate the owner's request on the merits and determine whether to accept or reject the request (and we would have upheld that determination unless it lacked a basis in reason or was made in disregard of the facts). DHCR had discretion to do lots of other things, too: It could have, for example, chosen to promulgate a different regulation that codified a substantive limit on amendments, or perhaps one that allowed for no amendments at all (so long as the regulation complied with statutory authority and the procedural requirements for issuing rules). What settled law disallows is the promulgation of regulations that purport to grant unfettered discretion to make ad hoc, standardless decisions (see Nicholas v Kahn, 47 NY2d 24, 34 [1979] ["an administrative agency is forbidden from exercising its discretionary power without first detailing standards or guides to govern the exercise of that discretion"]). There is nothing "paradoxical" about stating (1) DHCR has discretion to evaluate amendments based on standards the agency has set forth; and (2) DHCR does not have "discretion" to invent a category for substantively filtering amendments that has no basis in the regulation's text (which, as currently written, is purely procedural). A regulation that says, "file your form in triplicate and we'll give you an answer" is straightforward, procedural, and would vest a regulator with unfettered discretion because it is standardless. The regulation here outlines a straightforward procedure for owners to request amendments, but it contains no standards that restrict the substance of the amendments that owners can request nor gives any guidance to owners or agency staff as to the standards governing review of applications.
Footnote 11: As further evidence of DHCR's intent, DHCR's Rent Registration website provides links to several documents that detail the process for amending registration statements, but does not mention any restrictions on the types of amendments that the agency will consider on the merits (see e.g. New York State Homes and Community Renewal, Restrictions on Filing Amended Registrations [https://hcr.ny.gov/system/files/documents/2024/05/restrictions-on-filing-amended-registrations-05-2024.pdf]; Rent Registration Frequently Asked Questions [https://hcr.ny.gov/system/files/documents/2024/05/rent-registration-faqs-w-toc-05212024.pdf]).

Footnote 12:The majority critiques me for crediting the owner's assertion that the registrations were in error (see majority op at 10). That criticism misses the mark for several reasons. First, it conflates the determination that the owner erroneously filed the registrations with a determination that the unit was not subject to deregulation. The former determination does not definitively establish the regulated status of the unit—it merely removes those two erroneous filings from any determination of whether the unit was regulated. Second, Supreme Court determined that the registrations were erroneously filed. DHCR has not challenged that determination and, indeed, does not dispute that the owner erroneously claimed an exemption for a unit that had been deregulated for more than a decade. Third, my disagreement with the majority does not turn on whether the registrations were erroneous. The question here is whether the standardless summary rejection is permissible. Absent a regulation substantively bounding DHCR's discretion or a consistent rule that can be divined from its actual practice and cogently and unequivocally articulated, DHCR's summary rejection of the application is impermissible. It would have been free to reject the application on the merits if the evidence supported that determination, or was insufficient to establish the owner's claim.

Footnote 13: The three-category breakdown is just one in a series of inconsistent and constantly shifting definitions that DHCR has introduced in response to the owner's application and throughout the course of litigation—none of which provides any more clarity than the others. (Throwing spaghetti at the wall to see what sticks won't work if the spaghetti is all uncooked). Initially, DHCR contended that a request is substantive when it "seek[s] to re-calculate the rental history of the apartment includ[ing] seeking to add apartment improvement rent increases, major capital improvement increases, guideline increases, vacancy allowances/longevity that were not previously charged and paid by the tenant." Subsequently, in denying the owner's Petition for Administrative Review, DHCR explained that a substantive amendment is one that "seek[s] to remove an apartment from rent stabilized status for any reason claimed." Finally, in its briefs to the Appellate Division and to this Court, DHCR argued that a request is substantive when it "affect[s] the subject apartment's rent-regulatory status" or has "potentially significant implications for a future tenant's status."

Footnote 14: That may very well be one of DHCR's goals. Prior to the HSTPA, which abolished high-rent vacancy decontrol (a procedure that allowed some regulated apartments to be removed from rent control once they became vacant and the rent reached a certain threshold), some apartments were illegally deregulated or subjected to illegal rent increases (see e.g. New York State Homes and Community Renewal, Attorney General James and HCR Return Over 300 Affordable Housing Units to New York City [https://hcr.ny.gov/news/attorney-general-james-and-hcr-return-over-300-affordable-housing-units-new-york-city] [Sept. 17, 2024]). If that is indeed DHCR's goal, there are much more direct ways the agency could pursue it (and the agency should be transparent about that, rather than creating a nonsensical distinction).

Footnote 15: Cf. Franz Kafka, The Metamorphosis (1915) ("I cannot make you understand. I cannot make anyone understand what is happening inside me. I cannot even explain it to myself").

Footnote 16: Another DHCR decision, from 2022, is also completely incompatible with DHCR's decision in the instant case. In Matter of Hancock 21 PP Holdings LLC (DHCR Administrative Review Docket KR210013RO [2022]), the owner of a four-story building in Brooklyn sought to amend a 2018 registration, which had incorrectly stated that the apartment in question was deregulated, when it was actually rent-stabilized (the same request here, but in the opposite direction). The owner also sought to correct the lease start and end dates, the tenant's name, and the rent charged. DHCR permitted all amendments except for the request to amend the rent. However, even with respect to that request, DHCR considered the claim on the merits and found that "the documents submitted by the owner did not support the legal regulated rent change requested in their application."
The majority tries to make sense of this decision (and justify its interpretation of DHCR's limiting principle) by claiming that "allowing an owner to amend a registration to add rent-stabilized status . . . would not present the same risk of fraud" as amendments that seek to remove such status (majority op at 8, n 5). Once again, the majority's interpretation is nowhere to be found in the text of DHCR's regulation, DHCR has not consistently adopted it, and that restriction is inconsistent with the substantive/ministerial distinction that DHCR has adopted. Moreover, DHCR has never stated that the "risk of fraud" is what it aims to prevent through its amendment-filtering technique. And in any event, even a merits determination that the registrations were erroneous would not determine the regulatory status of the unit—it would merely place it back in the position it was before the erroneous filings were made.
Footnote 17: DHCR has not provided a clear answer as to whether, if a tenant had opposed the owner's application, it would have reached the merits of the owner's claim—or, alternatively, whether this is the kind of change that cannot be made through the amendment process at all (see e.g. Tr. at 25). Counsel for DHCR stated that the agency was required to review certain kinds of determinations brought by tenants, such as an overcharge or status challenge, but gave no answer as to whether it would be required to respond to a tenant's challenge in the context of an amendment proceeding (id.). The owner maintains that there is now a current tenant-in-possession who could now participate in the process, and that the proper remedy would be to remand the case back to DHCR, so that "[t]o the extent the tenant wants to participate, it can" (id. at 30). 

Footnote 18: DHCR has issued at least one decision that directly contradicts the majority's claim that, when the issue is "who is occupying the apartment," that makes an amendment application non-substantive and capable of being resolved. In Matter of East 53 Bsd LLC (DHCR Administrative Review Docket JU210053RO [2022]), the prior owner wrongly registered his own apartment as "rent stabilized" during the period of 2015 to 2019 when, in fact, it should have been labeled "temporarily exempt," as he was the owner and not a tenant. DHCR nonetheless denied the current owner's application to amend the erroneous registrations, concluding, as the agency did here, that "amendments that seek to remove an apartment from rent stabilized status for any reason claimed are not allowed."

Footnote 19: The majority's reasoning is based on a misunderstanding of the distinction between registration and regulatory status. Whether an apartment in New York City is "rent-regulated" is determined by law: specifically, the RSL, RSC, Emergency Tenant Protection Act (ETPA) and other related legislation. If an apartment is regulated, the owner must register it annually with DHCR. However, registration itself does not determine the apartment's regulatory status (or, put another way, registering an apartment as regulated does not automatically confirm that the apartment is in compliance with the relevant laws). Rosenberg itself is quite clear on this point: DHCR in that decision explained that registrations are "not generally proof" of an apartment's underlying status, and it allowed the owner to amend the registration to reflect the apartment not being regulated without ruling on the apartment's legal status. Rosenberg also stands for the proposition that DHCR can allow owners to amend a registration without DHCR needing to inquire into or make a definitive ruling on the regulation history. This allows the tenant to challenge the apartment's regulatory status in the future (whether through an overcharge or another administrative proceeding) potentially proving that the apartment should, in fact, have been regulated. If a tenant initiates an overcharge proceeding against a landlord (for example, alleging that the apartment should be rent-regulated but is being charged at market rate), then the agency (or court) would need to determine whether the apartment is regulated as a matter of law. In that case, the apartment's registration status would not be dispositive. Contrary to the majority's assertion, I am not suggesting that DHCR should accept all amendments without any inquiry into regulatory status (see majority op at 10). Instead, I am stating three simple propositions: (1) DHCR may investigate the regulatory status if it wishes; (2) as DHCR itself has stated, allowing or disallowing an amendment need not determine regulatory status; and (3) DHCR can—and should have—promulgated rules that are sufficiently detailed to ensure that its decisionmaking is not arbitrary.

Footnote 20: Subsequent DHCR decisions have denied similar applications, even when owners provided additional supporting evidence along those lines (see e.g. 300 E 46th St, LLC, DHCR Administrative Review Docket CV410040RO [2021]; Matter of NCR, LLC, DHCR Administrative Review Docket No. IX410006RO [2021]; OSI, LLC, DHCR Administrative Review Docket 1P410002RO [2021]; 37A Bedford LLC, DHCR Administrative Review Docket JV410031RO [2022]).