Matter of Lansingburgh Cent. Sch. Dist. v New York State Educ. Dept. (2021 NY Slip Op 04397)





Matter of Lansingburgh Cent. Sch. Dist. v New York State Educ. Dept.


2021 NY Slip Op 04397


Decided on July 15, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 15, 2021

531120
[*1]In the Matter of Lansingburgh Central School District et al., Appellants,
v
New York State Education Department et al., Respondents.

Calendar Date:May 27, 2021

Before:Lynch, J.P., Clark, Aarons and Colangelo, JJ.

Guercio & Guercio LLP, Latham (Stephanie A. Denzel of counsel), for appellants.
Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for New York State Education Department and others, respondents.
Honeywell Law Firm, PLLC, Albany (Paul M. Aloy of counsel), for Rensselaer City School District and another, respondents.
Harris Beach PLLC, Albany (Douglas E. Gerhardt of counsel), for Schenectady City School District, respondent.
Bond, Schoeneck & King, PLLC, Albany (Stuart F. Klein of counsel), for True North Troy Preparatory Charter School, respondent.



Clark, J.
Appeal from a judgment of the Supreme Court (Zwack, J.), entered February 13, 2020 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent New York State Education Department certifying an intercept of state aid against petitioner Lansingburgh Central School District.
In New York, charter schools lack the power to levy taxes and, therefore, rely upon a combination of state aid and charitable contributions to operate (see Education Law § 2856 [1], [3]). As set forth in the New York Charter Schools Act of 1998 (see Education Law § 2850 [1]), charter schools are publicly financed by each public school district whose residents elect to attend the charter schools (see Education Law § 2856 [1]). Specifically, when a student chooses to attend a charter school rather than a public school in his or her school district of residence, the school district is required to pay the charter school a per-pupil tuition rate in six bimonthly installments (see Education Law § 2856 [1]; 8 NYCRR 119.1 [d]). For a student with disabilities who attends a charter school, the school district must also distribute to the charter school any state and federal aid attributable to the student to cover the cost of any special programs and/or services provided to the student (see Education Law § 2856 [1] [b]; 8 NYCRR 119.1 [b] [8], [9]). If a school district fails to pay a charter school the requisite tuition, there is a statutory mechanism — referred to as the "intercept process" — by which the charter school may request that state aid allocated to the school district be intercepted and the amount of unpaid tuition be directed to the charter school (see Education Law § 2856 [2]; see also 8 NYCRR 119.1 [e] [2]). To trigger the intercept process, the charter school must notify respondent Commissioner of Education of the school district's failure to pay tuition; the Commissioner thereafter certifies to respondent Comptroller the amount of unpaid tuition (see Education Law § 2856 [2]; 8 NYCRR 119.1 [a], [c] [3]; [e] [2]). The Comptroller, in turn, deducts the amount of unpaid tuition from the state aid due to that school district and directs such funds to the charter school (see Education Law § 2856 [2]; 8 NYCRR 119.1 [a], [e] [2]).
In November 2017, petitioner Lansingburgh Central School District (hereinafter LCSD) ceased making its required bimonthly tuition payments to respondent True North Troy Preparatory Charter School (hereinafter Troy Prep) for the 2017-2018 school year. Consequently, in May 2018, Troy Prep notified respondent New York State Education Department (hereinafter the Department) that LCSD had failed to pay its full tuition obligation for the 2017-2018 school year, thereby resulting in an outstanding balance of $595,326, and requested that the unpaid tuition amount be intercepted. In August 2018, after completing its year-end reconciliation process (see Education Law[*2]§ 2856 [1] [b]; 8 NYCRR 119.1 [c] [2]), Troy Prep supplemented its intercept request, adjusting the alleged unpaid balance to $671,945. In May 2019, the Department — on behalf of the Commissioner — sent a notice to LCSD and respondent Office of the State Comptroller certifying that LCSD owed Troy Prep a total of $588,466 in unpaid tuition. As a result, the Office of the State Comptroller intercepted $588,466 in state aid due to LCSD and directed such funds to Troy Prep.
In September 2019, petitioners commenced this CPLR article 78 proceeding seeking review of the $588,466 intercept. Although petitioners generally challenged the full intercept amount based upon Troy Prep's alleged failure to comply with a regulatory deadline (see 8 NYCRR 119.1 [c] [3]), they only specifically disputed $39,548.36 of the intercepted funds. Following joinder of issue, Supreme Court dismissed the petition, finding, among other things, that petitioners lacked standing. Petitioners appeal.
As an initial matter, we agree with petitioners that Supreme Court erroneously concluded that they lacked standing to commence this proceeding. To establish standing to challenge governmental action, the party asserting standing must show "first, an injury-in-fact and, second, that the injury 'fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision'" (Matter of Gym Door Repairs, Inc. v New York City Dept. of Educ., 112 AD3d 1198, 1199 [2013], quoting New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772-773 [1991]). Here, petitioners present a conceivable injury-in-fact — that is, that funds were improperly intercepted for nonresident students, which had the effect of taking state aid away from LCSD's resident students. With respect to the second prong, we find that the alleged injury falls within the zone of interests sought to be promoted or protected by the Education Law. Accordingly, we conclude that petitioners have standing to challenge the intercept determination (see Brown v State of New York, 144 AD3d 88, 92-93 [2016]; Matter of Williamsburg & Greenpoint Parents: Our Pub. Schs.! v Board of Trustees, State Univ. of N.Y., 130 AD3d 638, 639 [2015]; see generally Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y., 287 AD2d 858, 861 [2001]).
Turning to the merits, petitioners assert that Troy Prep's intercept request was untimely under 8 NYCRR 119.1 (c) (3) and that the Department irrationally concluded that such regulatory provision does not operate as a statute of limitations or jurisdictional bar that precludes untimely intercept requests. Petitioners argue that, given Troy Prep's violation of 8 NYCRR 119.1 (c) (3), the Department was barred from reviewing the intercept request and that the entire intercept amount should therefore be annulled. We disagree.
Pursuant [*3]to 8 NYCRR 119.1 (c) (3), when a school district fails to fulfill its financial obligation of making bimonthly tuition payments to a charter school, the charter school must "notify" the Commissioner of such failure "no later than May 31st of the school year in which the payments were due." Here, contrary to petitioners' contention, Troy Prep complied with the regulation by submitting its intercept request to the Department in mid-May 2018, which it supplemented/adjusted in August 2018 after completing its year-end reconciliation process (see Education Law § 2856 [1] [b]; 8 NYCRR 119.1 [c] [2]). In our view, given that Troy Prep timely notified the Department of LCSD's failure to fulfill its financial obligations during the 2017-2018 school year, there was no violation of 8 NYCRR 119.1 (c) (3).
In any event, even if Troy Prep's August 2018 submission were viewed as violating the regulatory deadline, we would not disturb the Department's interpretation of 8 NYCRR 119.1 (c) (3). In reviewing the Department's interpretation of this regulatory provision, we defer to such interpretation so long as it is neither irrational nor unreasonable (see Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019]; Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of Abramoski v New York State Educ. Dept., 134 AD3d 1183, 1185 [2015], lv dismissed and denied 27 NY3d 1044 [2016]). This is because, "having authored the promulgated text and exercised its legislatively delegated authority in interpreting it, the [Department] is best positioned to accurately describe the intent and construction of its chosen language" (Andryeyeva v New York Health Care, Inc., 33 NY3d at 174).
Here, the Department rationally and reasonably interpreted the May 31st deadline as the date by which charter schools must submit intercept requests in order to obtain timely intercept disbursements, rather than a statute of limitations or jurisdictional bar. Such interpretation is consistent with the plain language of the regulation, which merely requires notification of a school district's failure to comply with its financial obligations (see 8 NYCRR 119.1 [c] [3]), as well as the overall statutory scheme of the New York Charter Schools Act of 1998 (see Education Law art 56). To hold otherwise would unnecessarily penalize charter schools and their students by depriving them of funds to which they are statutorily entitled and create a situation in which a delinquent school district is relieved of its financial obligations on a technicality and, as a result, receives an unwarranted windfall. Moreover, as evidenced by a letter authored by the Department in 2014, the Department has maintained that 8 NYCRR 119.1 (c) (3) does not operate as a statute of limitations and has consistently declined to apply it as such. Accordingly, had Troy Prep violated 8 NYCRR 119.1 (c) (3), such violation would not, as petitioners' allege, bar the Department from reviewing Troy Prep's intercept [*4]request.
As a further matter, petitioners argue that the total intercept amount included $39,548.36 in overcharges resulting from, among other things, errors allegedly contained in Troy Prep's intercept request and that the Department therefore acted arbitrarily, capriciously and irrationally by approving and certifying — on behalf of the Commissioner — the intercept of such funds. However, petitioners did not bring the claimed errors to the Department's attention prior to the intercept, submit any documentation demonstrating that the disputed students had been adjudicated as nonresidents of LCSD (see 8 NYCRR 100.2 [y] [6]) or contest Troy Prep's representation that it had adjusted its intercept request based upon residency concerns communicated by LCSD. In any event, even if the alleged errors had been brought to the attention of the Department, a review of the relevant statutory and regulatory scheme convinces us that the intercept process is not adjudicatory in nature and thus is not to be used to resolve disputes between school districts and charter schools regarding matters such as student residencies, dates of attendance or the provision of special education services (see Education Law art 56; 8 NYCRR 119.1). There are entirely separate statutory and regulatory mechanisms by which school districts and charter schools may resolve such disputes (see Education Law §§ 310, 2855 [4]; 8 NYCRR 100.2 [y] [6]). As for petitioners' assertion that the Department's intercept calculation erroneously included tuition for weeks outside of LCSD's school year, we find that the Department rationally interpreted 8 NYCRR 119.1 (b) (2) to conclude that Troy Prep was entitled to funding for the number of days that LCSD's residents attended Troy Prep, regardless of whether LCSD's school year had begun or ended. Thus, we discern no basis upon which to conclude that the Department acted arbitrarily and capriciously or irrationally.
To the extent that we have not specifically addressed any of petitioners' arguments, they have been reviewed and found to be without merit.
Lynch, J.P., Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.