Matter of Common Cause N.Y. v Kosinski (2025 NY Slip Op 04690)

Matter of Common Cause N.Y. v Kosinski

2025 NY Slip Op 04690

Decided on August 14, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 14, 2025

CV-24-1549
[*1]In the Matter of Common Cause New York et al., Appellants,
v
Peter S. Kosinski et al., Constituting the State Board of Elections, et al., Respondents.

Calendar Date:May 29, 2025

Before:Garry, P.J., Clark, Lynch and McShan, JJ.; Pritzker, J., vouched in.

Patterson Belknap Webb & Tyler LLP, New York City (Isaac Weingram of counsel), for appellants.
Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for Peter S. Kosinski and others, respondents.
Greenberg Traurig, LLP, Albany (Cynthia E. Neidl of counsel), for Election Systems & Software, LLC, respondent.

McShan, J.
Appeal from a judgment of the Supreme Court (Kimberly O'Connor, J.), entered April 18, 2024 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted a motion by respondents Commissioners of the State Board of Elections and the State Board of Elections to dismiss the petition.
In January 2019, Election Systems & Software, LLC (hereinafter ES & S) submitted an application for approval of an updated voting system, which included the ExpressVote XL voting machine (see Election Law § 7-200). Following a lengthy review process (see 9 NYCRR 6209 et seq.), respondents State Board of Elections and its Commissioners (hereinafter collectively referred to as the Board), in an August 2023 resolution, approved the ExpressVote XL for use. Thereafter, petitioners — consisting of Common Cause New York, a nonpartisan advocacy organization that has a mission of promoting voting rights and has members residing throughout the state, and certain of its individual members, and the Black Institute — commenced this proceeding pursuant to CPLR article 78 seeking a writ of mandamus to compel the Board to rescind its approval for the use of the ExpressVote XL in this state. Petitioners allege that Common Cause's members will suffer harm as a result of the machine's mechanism for counting votes — specifically, a scannable barcode — that will impede their right to independent verification of their voting ballots. The Board filed a pre-answer motion to dismiss the proceeding, alleging, among other things, that petitioners lacked standing. ES & S moved to intervene and file opposition to the petition, which Supreme Court granted. Supreme Court then granted the Board's motion, finding that petitioners lacked standing because they had failed to allege any sufficiently specific injuries-in-fact.[FN1] Petitioners appeal.[FN2]
"The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit, although that inquiry often turns on the nature and source of the claim asserted" (Raines v Byrd, 521 US 811, 818 [1997] [internal quotation marks and citations omitted]). "A petitioner challenging government agency action pursuant to [a CPLR] article 78 petition has the burden of demonstrating an injury[-]in[-]fact and that the alleged injury falls within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the government has acted in order to have standing to challenge that action" (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d 505, 515 [2023] [internal quotation marks, brackets and citations omitted]; see Matter of 61 Crown St., LLC v New York State Off. of Parks, Recreation & Historic Preserv., 207 AD3d 837, 839 [3d Dept 2022]). "The injury-in-fact requirement necessitates a showing that the party has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural but is sufficiently concrete and particularized [*2]to warrant judicial intervention" (Matter of Borrello v Hochul, 221 AD3d 1484, 1485 [4th Dept 2023] [internal quotation marks, ellipsis and citations omitted], appeal dismissed 41 NY3d 1006 [2024], lv denied 42 NY3d 910 [2025]; see Matter of Hohman v Town of Poestenkill, 179 AD3d 1172, 1173-1174 [3d Dept 2020]). As relevant here, an organization may establish organizational standing "on behalf of its members, provided that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 51 [2019] [internal quotation marks and citation omitted]; see Matter of Friends of the Shawangunks v Town of Gardiner Planning Bd., 224 AD3d 961, 962 [3d Dept 2024]; Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation, 103 AD3d 1006, 1007 [3d Dept 2013], lv denied 21 NY3d 862 [2013]).
The Board does not contest that petitioners' alleged injury falls within the zone of protection of the statute, nor do they argue that the claims are not adequately representative of Common Cause's organizational purposes or that its individual members would be required to participate in this case (see Matter of Seneca Lake Guardian v New York State Dept. of Envtl. Conservation, 229 AD3d 987, 989 [3d Dept 2024]). The primary issue on appeal is whether petitioners have sufficiently alleged an injury-in-fact to one of Common Cause's members, the primary basis of petitioners' assertion of organizational standing. In advancing their argument for affirmance, the Board contends that several more steps after approval of the Express Vote XL must follow in order for petitioners to suffer any harm, including the purchase of the machines, before they are put into use and, in that respect, the Board insists that the allegations of harm are too speculative to permit standing.
At the outset, the Board's assertion that the purchase of an ExpressVote XL by a county is necessary in order for the injury to be sufficiently established is without merit. That argument is founded upon the assumption that the purchase and use of the machine remains speculative after the Board's approval. We need only look to the approval process for voting systems and the resulting approval, which operate as a threshold requirement for the sequence of events that will result in the use of a voting machine, as county boards of elections may only purchase and utilize machines that have undergone the approval process (see Election Law §§ 7-200 [1]; 7-204). The record clearly reflects that, at the time of the petition, the remaining steps in the process that the Board relies upon were "at least reasonably certain to occur, not merely speculative" (Matter of Developmental Disabilities Inst., Inc. v New York State Off. for People with Dev. Disabilities, 200 AD3d 1273, 1275 [3d Dept 2021]). To that [*3]end, the Board's specific approval of the ExpressVote XL creates a clear likelihood of that particular machine being put into use in the counties that already utilize ES & S voting systems. The affirmation in support of ES & S's motion to intervene says as much, noting that ES & S was actively marketing the ExpressVote XL to various county boards of elections and that various counties were actively seeking new or updated machines.[FN3] Under these circumstances, petitioners do not rely on an "amorphous allegation of potential future injury," as there is a clear indication that the sequence of events that will reasonably lead to the use of the ExpressVote XL in certain counties in this state was already underway at the time the petition was filed (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 7 [2014]; see New York Univ. v City of New York, 230 AD3d 416, 421 [1st Dept 2024]). "Judicial consideration of [petitioners'] claim . . . should not require that [they] first experience the harm [they] seek[ ] to avoid," only that such harm is reasonably certain to occur (New York Univ. v City of New York, 230 AD3d at 421). To that end, accepting the allegations in the petition as true for purposes of determining the existence of standing, which we must (Matter of Seneca Lake Guardian v New York State Dept. of Envtl. Conservation, 229 AD3d at 989), we find that petitioners sufficiently articulate a risk that "is not founded on impermissible layers of speculation" (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d at 515 [internal quotation marks, brackets and citation omitted]; see Matter of Dental Socy. of State of N.Y. v Carey, 61 NY2d 330, 334 [1984]; Matter of Lansingburgh Cent. Sch. Dist. v New York State Educ. Dept., 196 AD3d 937, 939 [3d Dept 2021]; compare Matter of Gym Door Repairs, Inc. v New York City Dept. of Educ., 112 AD3d 1198, 1199 [3d Dept 2013]).
We also disagree with the Board's contention that petitioners will not suffer any harm until such time as an ExpressVote XL has been placed into use and generates a barcode that does not mirror the printed summary of a voter's selections. It is not whether there is an inconsistency between the barcode and the summary that are generated by the ExpressVote XL that is the predicate for the harm. Rather, as alleged by petitioners, it is the inability of a voter to confirm that the barcode and the summary are consistent prior to casting a vote that bears relation to the aims of the statute (see Election Law § 7-202 [1] [e]). The prospective harm as alleged occurs immediately upon the use of the machine by any voter, which is directly tethered to the Board's determination that the machine meets the aforementioned statutory requirement and the corresponding certification of the machine that would make it available for counties to purchase.
The Board further posits that petitioners cannot establish the existence of an injury that [*4]differs from the public at large. We do not believe that the facts of this case warrant "an overly restrictive analysis of [that] requirement" (Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 310 [2015]). Indeed, that requirement is tempered by the principle "that standing is not to be denied simply because many people suffer the same injury," as doing so would insulate the "most injurious and widespread Government actions" from scrutiny (United States v Students Challenging Regulatory Agency Procedures [SCRAP], 412 US 669, 687, 688 [1973]; see Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 991-992 [1976]; National Org. for Women v State Div. of Human Rights, 34 NY2d 416, 420 [1974]). Within that context, petitioners have alleged a particularized harm flowing from the approval of the ExpressVote XL and, although it likely affects numerous high-propensity voters as posited in the petition and accompanying affirmation, it is sufficiently "different in kind or degree from that of the public at large" to permit standing (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 775 [1991]; see Matter of Sierra Club v Village of Painted Post, 26 NY3d at 311; Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 305 [2009]).
Finally, we decline the Board's request for affirmance on the alternative ground that mandamus to compel is inappropriate in this proceeding. Petitioners all but concede that point in their reply brief, and we agree. "The availability of mandamus to compel the performance of a duty does not depend on the applicant's substantive entitlement to prevail, but on the nature of the duty sought to be commanded — i.e., mandatory, non-discretionary action. A ministerial act is best described as one that is mandated by some rule, law or other standard and typically involves a compulsory result. Discretionary acts, on the other hand, are not mandated and involve the exercise of reasoned judgment, which could typically produce different acceptable results. Mandamus is not available to compel an officer or body to reach a particular outcome with respect to a decision that turns on the exercise of discretion or judgment. In other words, mandamus will lie to compel a body to perform a mandated duty, not how that duty shall be performed" (Alliance to End Chickens as Kaporos v New York City Police Dept., 152 AD3d 113, 117 [1st Dept 2017] [internal citations omitted], affd 32 NY3d 1091 [2018], cert denied 587 US 1027 [2019]; see Matter of Hussain v Lynch, 215 AD3d 121, 127 [3d Dept 2023]). Contrary to petitioners' contention, the facts here do not suggest a ministerial duty, as there is a clear discretionary component with respect to the Board's determination that the ExpressVote XL met the specific requirement at issue here; i.e., providing a voter with the ability to independently confirm his or her vote prior to submission. Under these circumstances, mandamus to compel does not lie (see Alliance [*5]to End Chickens as Kaporos v New York City Police Dept., 152 AD3d at 118; Matter of Associated Gen. Contrs. of Am., N.Y. State Ch. v Roberts, 122 AD2d 406, 407 [3d Dept 1986]).
Nevertheless, dismissal of the petition is not required based upon our determination. We may consider the modern view of a petitioner's pleading requirements in a CPLR article 78 proceeding, which merely require that the petitioner " 'set forth his [or her] facts and his [or her] prayer for relief and such relief as is proper may be given to him [or her]' " (Vincent C. Alexander, Prac Commentaries, McKinney's Cons Laws of NY, CPLR C7801:1, quoting NY Jud Council, Fourth Ann Rep 19 [1938]). Accordingly, "notwithstanding the nomenclature of [petitioners'] application," (see Matter of Hussain v Lynch, 215 AD3d at 127), we find that their request can be readily construed as one for mandamus to review, which asks "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; see Matter of LL 410 E. 78th St. LLC v Division of Hous. and Community Renewal, ___ NY3d ___, ___, 2025 NY Slip Op 01672, *1 [2025]; Matter of Clean Air Action Network of Glens Falls, Inc. v Town of Moreau Planning Bd., 235 AD3d 1124, 1126 [3d Dept 2025]). On that basis, we remit the matter for the Board to file an answer.[FN4]
Garry, P.J., and Lynch, J., concur.
Clark, J. (dissenting). As the majority recognizes, this appeal turns on whether petitioners have sufficiently alleged that one of petitioner Common Cause New York's individual members suffered an injury-in-fact such that he or she has standing to sue, thus satisfying Common Cause's organizational standing requirements. In our view, the instant petition fails to set forth sufficient grounds to establish that petitioners had standing to bring the instant proceeding. As such, we respectfully dissent.
As relevant to this appeal, an organization may obtain organizational standing "by asserting a claim on behalf of its members, provided that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 51 [2019] [internal quotation marks and citation omitted]; see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 775 [1991]). Common Cause would thus have to show that one of its members "might suffer an injury[-]in[-]fact — i.e., actual harm by the action challenged that differs from that suffered by the public at large — and that such injury falls within the zone of interests of the legislation or statute through which the government acted" (Matter of Clean Air Coalition of W. N.Y., Inc. v New York State Pub. Serv. Commn., 226 AD3d 108, 115 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Lawyers for Children [*6]v New York State Off. of Children & Family Servs., 218 AD3d 913, 914 [3d Dept 2023]). To satisfy the injury-in-fact requirement, petitioners must establish that at least one member "has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural but is sufficiently concrete and particularized to warrant judicial intervention" (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d 505, 515 [2023] [internal quotation marks and citation omitted]).
Here, the petition alleges that the individual members would suffer harm if they were forced to vote on an ExpressVote XL voting machine because that system would deny them "an opportunity to privately and independently verify votes selected and the ability to privately and independently change such votes or correct any error before the ballot is cast and counted" (Election Law § 7-202 [1] [e]). Even accepting those allegations as true (see Matter of Village of Woodbury v Seggos, 154 AD3d 1256, 1259 [3d Dept 2017]), the challenged resolution simply approved the addition of the ExpressVote XL to a list of approved voting machines, which allowed intervenor-respondent Election Systems & Software, LLC to begin to market that machine to county boards of elections across the state. Of course, prior to purchase, it is impossible for anyone to vote on an ExpressVote XL, let alone be forced to vote on one. Therefore, prior to purchase of a machine by a county, injury-in-fact is not merely speculative, it is a logical and legal impossibility upon which standing cannot rest (compare Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d at 515; Matter of Seneca Lake Guardian v New York State Depart. of Envtl. Conservation, 229 AD3d 987, 990 [3d Dept 2024]).[FN5] In this vein, the individual members cannot "show that [they] would suffer direct harm, injury that is in some way different from that of the public at large" (Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774). As such, here, the "injury-in-fact" is merely worry and concern that the individual members' county might purchase the ExpressVote XL and then, if all of the other pieces fall into place,[FN6] they would be forced to vote on it. When the instant petition was filed, none of these events had taken place, and they were not reasonably certain to occur, such that the prospect of the individual members having to vote on the ExpressVote XL was mere conjecture (see Matter of New York State Bd. of Regents v State Univ. of N.Y., 178 AD3d 11, 18-19 [3d Dept 2019], lvs denied 35 NY3d 912 [2020], 35 NY3d 912 [2020]; cf. American Ins. Assn. v Chu, 64 NY2d 379, 385-386 [1985], appeal dismissed 474 US 803 [1985]; compare Matter of Seneca Lake Guardian v New York State Dept. of Envtl. Conservation, 229 AD3d at 989-990; Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police, 29 AD3d 68, 70 [3d Dept 2006]). Accordingly[*7], we would find that the harm alleged was too speculative and generalized, and that petitioners lacked standing (see Matter of New York State Bd. of Regents v State Univ. of N.Y., 178 AD3d at 18-19; Matter of Animal Legal Defense Fund, Inc. v Aubertine, 119 AD3d 1202, 1203-1204 [3d Dept 2014]), and as such, we respectfully dissent and would affirm the dismissal of the instant petition.[FN7]
Pritzker, J., concurs.
ORDERED that the judgment is reversed, on the law, without costs, motion denied, and matter remitted to the Supreme Court to permit respondents to file and serve an answer within 20 days of the date of this Court's decision.

Footnotes

Footnote 1: Supreme Court determined that petitioner Black Institute also did not have organizational standing. Any argument with respect to that determination has been abandoned by virtue of petitioners' failure to raise such a contention on appeal (see Matter of Garden of Eden Home, LLC v Bassett, 235 AD3d 1147, 1149 n 1 [3d Dept 2025]).
Footnote 2: In its brief on appeal, ES & S argues that petitioners' claim is barred by laches. That argument is raised for the first time on appeal and is therefore unpreserved (see Scott v Schwartz, 236 AD3d 1273, 1277 [3d Dept 2025]).

Footnote 3: ES & S further indicated that one such county had already determined to purchase the ExpressVote XL for use in an upcoming election, a decision that was only forestalled based upon this litigation. Standing principles do not require that we ignore the reasonable likelihood of a sequence of actions that have not occurred, even those that appear to be delayed largely because of the underlying litigation itself.

Footnote 4: To the extent that petitioners ask us to render a decision on the merits, we decline to do so. We note that the Board has not answered yet and the merits have not been meaningfully briefed (see Police Benevolent Assn. of New York State Troopers, Inc. v James, 218 AD3d 881, 882 [3d Dept 2023]). On that, we are mindful to note that our determination with respect to petitioners' standing in no way reflects a position on the ultimate merits of the petition.

Footnote 5: The majority cites to Matter of Stevens v New York State Div. of Criminal Justice Services (40 NY3d 505) in support of its argument that "petitioners sufficiently articulate a risk that 'is not founded on impermissible layers of speculation' " (majority op at __, quoting Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d at 515 [internal quotation marks, brackets and citation omitted]). We disagree that Stevens supports the majority's position. In Stevens, the risk of the petitioners being identified through the DNA Databank was not impossible, nor was it "founded on impermissible layers of speculation," because their unique injury had already occurred; i.e., their brothers' DNA was already stored in the DNA Databank (Matter of Stevens v New York State Div. of Criminal Justice Servs., 40 NY3d at 515 [internal quotation marks, brackets and citation omitted]). While certainly subsequent events needed to occur — i.e., commission of a crime involving DNA that results in a partial match to one of the petitioners — for them to actually be "identified through the Databank and targeted for police scrutiny because of [the] familial relationship and shared genetic material" (id.), their brothers' DNA being in the Databank leads directly to the possibility of that occurring.
Footnote 6: Even after purchase there are many things that need to happen before an individual member can vote on the machine, to wit: the county board of elections where that member resides must first purchase the machine; then, each purchased unit must undergo public acceptance testing (see 9 NYCRR 6209.10); and, if such testing is successful, that county board of elections must then decide to use that machine in an upcoming election. Those steps, however, are not set in motion until a machine is purchased.

Footnote 7: Based on our reading of the facts alleged and the relief sought in the petition, we conclude that petitioners seek only mandamus to compel respondents to vacate the resolution approving the ExpressVote XL. Indeed, through their initial appellate brief, petitioners reassert that the relief they seek is to compel such action. As we do not interpret the language in the petition as sounding in a mandamus to review, we would decline to construe it as such (compare Matter of Hussain v Lynch, 215 AD3d 121, 127 [3d Dept 2023]).